On respondent's petition for reconsideration filed April 10; respondent's petition for reconsideration allowed; former opinion (179 Or App 359, 40 P3d 1065) adhered to October 16, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# BRADLY MORRIS CUNNINGHAM, SR.,
*Appellant.*

## C930434CR; A87792

57 P3d 149

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Robert M. Atkinson, Assistant Attorney General, for respondent's petition.

No appearance *contra*.

Before Haselton, Presiding Judge, and Edmonds and Wollheim, Judges.

HASELTON, P. J.

Edmonds, J., dissenting.

## HASELTON, P. J.

The state petitions for reconsideration of our decision in *State v. Cunningham*, 179 Or App 359, 40 P3d 1065 (2002), in which we reversed defendant's conviction for murder, ORS 163.115, and remanded for a new trial. We grant reconsideration but reject the state's arguments and adhere to our disposition for the following reasons.

Defendant was convicted of the murder of his estranged wife, Cheryl Keeton Cunningham. In our original opinion, we reversed that conviction, holding that (1) the trial court had erroneously ruled that testimony recounting the victim's statements to her mother in a telephone conversation at 7:59 p.m. on the night of the murder was admissible under OEC 803(2), the "excited utterance" exception to the hearsay rule, *Cunningham*, 179 Or App at 379-81; and (2) that error was not harmless because the contested evidence "was the only direct evidence that the victim met defendant within minutes of her murder near where she had been murdered." *Id.* at 383. In so holding, we explicitly acknowledged that the state had presented a strong circumstantial case of defendant's guilt, but emphasized, nevertheless, that the improperly admitted evidence "supplies the missing link. It makes what might otherwise be reasonably inferred direct and explicit." *Id.*

The state now argues three alternative, and independently sufficient, grounds for reconsideration. First, the state asserts that, as a matter of law, we misconstrued and misapplied OEC 803(2). Second, even if testimony recounting the victim's statements in the 7:59 phone call is not admissible under OEC 803(2), the same evidence is nevertheless admissible under OEC 803(3), the "state of mind" exception to the hearsay rule. Third, and in all events, any error in admitting the testimony was harmless because the inferential "missing link" was also supplied by other unchallenged testimony, particularly including testimony by Marvin Troseth, the victim's mother's boyfriend, in which Troseth recounted his telephone conversation with defendant at 9:54 on the night of the murder during which he had mentioned the victim's 7:59 telephone call.

We adhere to our determination that the victim's statements in the 7:59 phone conversation did not fall within the "excited utterance" exception to the hearsay rule and reject, without further discussion, the state's challenges to our reasoning in that regard. The state's other two arguments warrant a more extended response.

## ADMISSIBILITY OF THE 7:59 PHONE CONVERSATION UNDER OEC 803(3)

■ On reconsideration, the state, for the first time in the course of this appeal, argues that evidence relating to the victim's statements in the 7:59 phone call alternatively would have been admissible under OEC 803(3), the "state of mind" exception.[1] As support for that proposition, the state invokes *State v. Clegg*, 332 Or 432, 31 P3d 408 (2001), which our Supreme Court issued two weeks after this case was argued to us and nearly six months before we issued our original opinion. For the following reasons, we decline to consider the merits of the state's argument as not properly raised under ORAP 6.25(1).

We begin by briefly canvassing the procedural history of the parties' positions and arguments regarding the admissibility of the 7:59 phone conversation. That issue first arose in the context of an evidentiary hearing on defendant's motion for pretrial release before the trial court in August 1993. Judge Bonebrake, who presided over that hearing, held, for purposes of that hearing, that the victim's statements in that portion of a handwritten note describing her second telephone conversation with defendant on the night of the murder, September 21, 1986—and, by implicit extension, her contemporaneous statements to her mother—were admissible under OEC 803(3) as evidence of the victim's intent.[2] At the same time, the court stated that it was unconvinced that the state had made an adequate showing of the admissibility of the same statements pursuant to OEC

---

[1] OEC 803(3) excepts from the general rule against hearsay evidence:

"A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health[.]"

[2] The court emphasized that it was not ruling that the evidence was admissible as "evidence of anyone else's [*e.g.*, defendant's] conduct."

803(2). The court emphasized that its rulings in that regard applied to the release proceeding only.

In July 1994, the court convened an omnibus hearing to address a variety of pretrial issues, including defendant's *in limine* motion to exclude evidence relating to the victim's statements, both written and oral, on the night of her death.[3] The state argued that those statements, including the victim's statements during the 7:59 conversation with her mother, were admissible under both OEC 803(2) and OEC 803(3).[4] Judge Alexander, who presided over the omnibus hearing (and at trial), ruled that the victim's statements that evening, including her statements during the 7:59 phone call, were admissible under OEC 803(2). He did not hold that those statements were admissible under OEC 803(3).[5]

At trial, the parties properly treated the court's omnibus hearing ruling on that matter as categorical. Accordingly, testimony describing the victim's statements in the 7:59 conversation was admitted without further argument or objection.

---

[3] The precise scope of defendant's *in limine* motion is described below in our discussion of the state's alternative evidentiary harmless error argument based on the Troseth testimony.

[4] In our original opinion, we stated that "the state explicitly abandoned" its arguments under OEC 803(3) before the trial court. *Cunningham,* 179 Or App at 321 n 10. That statement, as the state informed us on reconsideration, was erroneous. It was not, however, in any way relevant to our holding.

[5] The court did, however, rule that other statements the victim made at other times concerning feeling threatened by defendant were not admissible under OEC 803(3):

"The State next seeks to introduce statements made by [the victim] prior to her death, other than the conversations referred to above, relating her apparent belief that defendant would kill her. In some circumstances, those statements might be admissible to prove [the victim's] state of mind, if that was an issue in the case. The problem here is that [the victim's] belief that defendant intended to kill her is not probative of any issue in the case. Under OEC [803](3), the State is not allowed to offer hearsay to prove the conduct of a third person and the problem with 'a victim's statement that the victim is fearful of the defendant or a third person is that the victim's state of mind is not a relevant issue in a murder prosecution.' (Kirkpatrick, *Oregon Evidence,* Page 539). I find no other issue in this case that would permit the State to offer specific statements by [the victim] that defendant intended to kill her. I will permit the State to request reconsideration if some issue develops during trial that would provide this necessary element."

On appeal, defendant assigned error to the trial court's denial of his *in limine* motion seeking to exclude evidence describing the victim's statements on the night of her death.[6] Defendant argued that that evidence, including testimony relating the 7:59 conversation, was not admissible under OEC 803(2). In addition—and in apparent anticipation of an "alternative basis for affirmance" argument by the state—defendant argued that the evidence also would not have been admissible under OEC 803(3).

The state's respondent's brief relied solely on OEC 803(2). With respect to defendant's contentions regarding OEC 803(3), respondent's brief stated only:

"The next section of defendant's brief attacks the admission of [the victim's] statements under OEC 803(3), the state-of-mind exception. The point of this argument is unclear because the trial court refused to admit her statements under this exception."

The state made no argument about admissibility under OEC 803(3) in its brief, at oral argument, or after the case was submitted and the Supreme Court decided *Clegg*.[7]

With the stage so set, the procedural issue is presented: Under the circumstances here, can respondent seek reconsideration under ORAP 6.25(1) based on an "alternative basis for affirmance" that respondent could have raised in its briefing and argument on appeal but failed to do so?

ORAP 6.25(1) provides, in part:

"A petition for reconsideration shall be based on one or more of these contentions:

"(a)   A claim of factual error in the decision;

"(b)   A claim of error in the procedural disposition of the appeal requiring correction or clarification to make the disposition consistent with the holding or rationale of the decision or the posture of the case below;

---

[6] The scope of that assignment of error is addressed below. *See* 184 Or App at 303-09.

[7] *Cf. State v. Blair/Vanis*, 171 Or App 162, 166 n 5, 14 P3d 660 (2000), *rev den*, 332 Or 137 (2001) (where respondent failed to make "right for the wrong reason" argument, court deemed consideration of that matter waived).

"(c)   A claim of error in the designation of the prevailing party or award of costs;

"(d)   A claim that there has been a change in the statutes or case law since the Court of Appeals' decision; or

"(e)   A claim that the Court of Appeals erred in construing or applying the law. Claims addressing legal issues already argued in the parties' briefs and addressed by the Court of Appeals are disfavored."

None of the subsections is even arguably applicable here except for subsection (1)(e). No Oregon appellate decision has construed the scope of that provision. Is the operative phrase the court "erred in construing or applying the law" so broad as to encompass any argument that "the court got it wrong"— *i.e.*, that the *result* is "wrong" legally because there were other, albeit not briefed, legal grounds that would have supported a contrary result? Or does that provision speak more narrowly to legal error in the court's **reasoning** *as announced in its opinion*? Further, what does it mean that "claims addressing legal issues already argued * * * and addressed" are "disfavored"? Does that imply that new, and previously unbriefed, arguments are "favored"?

■       We begin with the text of subsection (1)(e). The unambiguous predicate of that provision's first sentence is that a petition is appropriate under that subsection only if the Court of Appeals has, in fact, "erred in construing and applying the law." That is, the focus on reconsideration must be on what the court *has done*—and not what it *could have done*. For example, if the assignment of error on appeal is that the trial court erred in dismissing based on lack of personal jurisdiction, and the appellate court reverses based on a legally correct analysis of the personal jurisdiction question, the losing respondent cannot obtain reconsideration by arguing, for the first time in the course of the appeal, that dismissal was nevertheless proper because the statute of limitations had expired. The supposed expiration of the limitations period would be immaterial to whether the court's decision as to personal jurisdiction had properly construed and applied the law.

■       Viewed in the context of the first sentence of subsection (1)(e), the "disfavored" language of the second sentence is

straightforward: The losing party is not, on reconsideration, simply to reiterate or regurgitate the arguments it made in its briefing. Rather, the petition is limited to identifying the legal error in the court's reasoning as expressed in the opinion. Examples may include assertions that the court misread or failed to address precedent or misapprehended the implications of its reasoning.

■■ That construction of subsection (1)(e) comports both with the broader context of ORAP 6.25 and with the pragmatic demands and dynamics of appellate practice in Oregon. ORAP 6.25(1) lists a discrete set of grounds for reconsideration. In contrast, if ORAP 6.25(1)(e) were construed as permitting reconsideration on grounds for affirmance never urged on appeal, that provision would essentially become a catch-all, a resort for the belated ingenuity of losing respondents. That, in turn, could, and would, circumvent and subvert the reasoned sequence of briefing, argument, and decision that is the foundation of Oregon's appellate process. Consequently, we decline to address the merits of the state's belated argument with respect to OEC 803(3).[8]

## EVIDENTIARY HARMLESS ERROR

The state contends, alternatively, that any error in admitting the hearsay recounting of the victim's statements in the 7:59 phone conversation was harmless because other evidence with similar probative significance was admitted without objection. The state points, particularly, to Marvin

---

[8] We note, parenthetically, that, even if that contention had been raised in the state's initial briefing on appeal, it would not have been properly cognizable as an alternative basis for affirmance. We can consider an alternative basis for affirmance only if we are confident that the record in the trial court would not have been materially different if the respondent had raised, and the trial court had ruled on, that contention. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing requisites for consideration of alternative basis for affirmance).

Here, if the trial court had admitted the challenged evidence under OEC 803(3) and not OEC 803(2), defendant would, at least, have been entitled to an instruction limiting the jury's use of that evidence "only to prove the declarant's [victim's] conduct and not the future conduct of another person." Legislative Commentary to OEC 803(3), *quoted in* Laird C. Kirkpatrick, *Oregon Evidence* 517 (3d ed 1996). *Accord Clegg*, 332 Or at 438, 442, 442 n 8 (noting that no limiting instruction was requested in that case and relating the circumstances of that case to the legislative commentary to OEC 803(3)). Thus, if the evidence had been admitted on the basis the state now argues, the record might well have been materially different.

Troseth's trial testimony recounting his telephone conversation with defendant at 9:54 on the night of the murder and to testimony by Detective James Ayers, one of the investigating officers, relating his conversation with defendant the same night.

We begin with Troseth. In September 1986, Troseth was the victim's mother's boyfriend. When the victim called her mother at 7:59 p.m. on September 21, the victim's mother called Troseth over so that he could hear what the victim was telling her. Later that evening, at 9:54 p.m., Troseth called defendant—and it is Troseth's testimony regarding that conversation that is the focus of the state's harmless error argument:

> "I said, 'Brad, do you know where Cheryl is?' And he said, 'No. She was supposed to be here about 8:00 to pick up the kids, but she hasn't arrived—she hasn't showed up yet.' *And I said, 'Well, that's funny because she called her mother and said that she was supposed to meet you down at that Mobil station.'* And he said, 'No, she was supposed to come up here.' "[9]

(Emphasis added.)

The state argues that defendant did not object to that testimony and that the emphasized language effectively supplies the same "missing link" as the direct hearsay recounting of the victim's 7:59 statements. That is, even if the victim's statements in the 7:59 conversation were inadmissible, a jury could reasonably, and equally, determine from Troseth's testimony that the person the victim met at the Mobil station shortly after 8:00 p.m. was defendant.

■ There is an initial appeal to the state's "functional equivalent" harmless error argument. However, as we explain below, it rests on a false first premise—that Troseth's testimony was admitted without objection. A review of the record shows otherwise—that, indeed, Troseth's testimony was subject to the same *in limine* ruling and consequent

---

[9] The state acknowledges that it did not bring that testimony to our attention in its respondent's brief or otherwise argue that the admission of the evidence that was the subject of defendant's assignment of error was harmless error.

assignment of error that was the basis of our reversal in our original opinion.

We recapitulate: Before trial, defendant filed an *in limine* motion to exclude "decedent's hearsay." In pertinent part, that motion sought to preclude the state from:

> "Introducing into evidence *or any mention thereof before the jury* of any of a variety of alleged oral declarations and notes purportedly made by the decedent Cheryl Keeton [including:]
>
> "* * * * *
>
> "Alleged oral statements made during telephone calls to Ms. Keeton's mother, her half-brother Jim Carr, and step-father Marvin Troseth. These calls purportedly all occurred after she returned home on the afternoon of September 21, 1986."

(Emphasis added.)

As the evidentiary basis for that motion, defendant submitted the transcripts of the prior pretrial release hearing before Judge Bonebrake. *See* 184 Or App at 295-96. In ruling on the *in limine* motion, Judge Alexander reviewed and relied on those transcripts.

At the pretrial release hearing, Troseth offered testimony about the 9:54 phone call that was virtually identical to his trial testimony, and defense counsel lodged a hearsay objection to Troseth's recounting, in that context, of the victim's statements to her mother at 7:59. Thus, the admissibility of the critical aspect of Troseth's testimony was squarely before the court when it denied defendant's *in limine* motion.

In particular, the following exchange took place at the release hearing:

"Q.  [Prosecutor:] Would you indicate to the Court what you and [defendant] discussed when you reached him at 9:54 at his residence?

"A.  [Troseth:] I asked [defendant] if he knew where Cheryl was.

"Q.  [Prosecutor:] What did he say?

"A. [Troseth:] He said, 'No. She was supposed to come up here and pick up the boys at about 8:00 o'clock and she hasn't showed up yet.'

"* * * * *

"THE WITNESS [Troseth]: I said, 'That's funny. She told her mother that you were having car problems and she was suppose to meet you at the Mobil station down by the IGA store,' not far from where they lived and—

"Q. [Prosecutor:] What did he say?

"A. [Troseth:] He said, 'No, she was supposed to—'I called her and she said that she was going to come up and pick up the boys at 8:00 o'clock.' "

The transcript of the release hearing reflects defense counsel's objections to that testimony on hearsay grounds, to the extent that the testimony was offered for the truth of the victim's alleged statement that she was going to be meeting defendant at the Mobil station. In response to defendant's objections, the state asserted that it was offering Troseth's statement referring to the 7:59 call only because it was necessary to put defendant's response—*viz.*, that the victim had told him that "she was going to come up and pick up the boys at 8:00"—into context. Judge Bonebrake effectively sustained defense counsel's hearsay objection in that he admitted the Mobil station testimony for a nonhearsay purpose, *"simply to show his* [defendant's] *response to it."* (Emphasis added.)

In sum: (1) Defendant's *in limine* motion sought to preclude "any mention," including by Troseth, of the victim's statements during the 7:59 call; and (2) at the time the court considered, and denied, that motion, it was well aware of Troseth's references to the victim's statements in the context of his recounting of his 9:54 conversation with defendant. Thus, the parties and the court fully understood that defendant's *in limine* motion encompassed Troseth's testimony in that regard, as well as all other evidence recounting the victim's statements at 7:59. Conversely, the court's categorical denial of the *in limine* motion necessarily determined that all such evidence, including Troseth's recounting of the victim's statements, was admissible without restriction under OEC 803(2).

■ As noted, at the time of trial, the parties properly recognized the court's *in limine* ruling as categorical, and defendant was not required to, and did not, reiterate his hearsay objection at trial. Thus, while the state is correct that there was no *trial* objection to Troseth's testimony regarding the 9:54 call, that testimony was, in fact, admitted over defendant's pretrial objection.

Defendant's sixteenth assignment of error on appeal states:

> "[Defendant] assigns error to the ruling allowing two September 21, 1986 oral hearsay statements and one handwritten note by Cheryl Cunningham into evidence under an excited utterance exception to the hearsay rule, OEC 803(2). [Defendant's] objections occurred at [specified location in the court file]. The court's ruling occurred at [another specified location in the court file]. *The improper evidence was admitted at TR Vol 8: p. 58 (line 23) through p. 59 (line 19); p. 61 (line 13) through p. 61 [sic] (line 6); p. 90 (line 3) through p. 91 (line 5); and State's Exhibit 7 (TR Vol 8 at 158). For convenience, State's Exhibit 7 is at App 12 and the testimony at App 13-14.*"[10]

(Emphasis added.) That assignment, while hardly a model of clarity, is technically sufficient under ORAP 5.45 (2000) because it indicates the "specific ruling that is being challenged" (the court's *in limine* ruling), ORAP 5.45(4) (2000),[11] and identifies the portions of the record where the issue was raised and where the challenged ruling was made.[12] However, the text of the assignment, in identifying where the

---

[10] The three transcript excerpts referred to in the assignment of error correspond to the excerpts reproduced at Appendix 13-14 of defendant's opening brief.

[11] ORAP 5.45(5) (2000) indicated that assignments of error "should conform to the illustrations in Appendix H" of the Oregon Rules of Appellate Procedure. Appendix H, in turn, provided in part, the following illustration: "The court erred in denying (or allowing) the following motion: [Set forth verbatim the motion and ruling of the court.]" (Bracketed material in original.)

[12] The assignment, in identifying the location of the trial court's allegedly erroneous ruling, refers to "CR 196," page 4-5, which appears to be a typographical error. In fact, the challenged ruling is set out at pages 4 and 5 of Court Record 197. That minor difference, however, did not force us to "search for the pertinent portion of the record in which the matter complained of appears." ORAP 5.45(3) (2000).

"improper evidence" was admitted, does not include any reference corresponding to Troseth's testimony recounting his 9:54 conversation with defendant.

We are thus faced with the question of whether the sixteenth assignment of error—which was the basis of our reversal in the original opinion—encompasses Troseth's testimony describing his 9:54 conversation with defendant to the extent that that testimony recounted the victim's 7:59 statements to her mother. The resolution of that question, in turn, depends on the answers to two subsidiary inquiries: (1) Did the trial court's *in limine* ruling, which is the subject of the assignment of error, encompass that aspect of Troseth's testimony? (2) Even if so, did defendant's failure to include Troseth's testimony in listing those portions of the record where the "improper evidence" was admitted somehow operate to waive any objection to the admission of that testimony?

We addressed the first inquiry above, but now offer further amplification in response to the dissent: As noted, the *in limine* motion sought to preclude the state from "introducing into evidence or any mention thereof before the jury of * * * [a]lleged oral statements made [by the victim] during telephone calls to [her] mother * * * and step-father, Marvin Troseth, on the evening of September 21, 1986." Contrary to the dissent, *see* 184 Or App at 310-11 (Edmonds, J., dissenting), the portion of Troseth's testimony that is critical to the state's harmless error argument fell squarely within the *in limine* motion. That is, that testimony did, in fact, recount the victim's statements made during her telephone call to her mother at 7:59 on the evening of September 21:

> "And I said, 'Well, that's funny *because she called her mother and said that she was supposed to meet you down at that Mobil station.*' "

(Emphasis added.)

To be sure, Troseth made that statement in recounting his conversation with defendant at 9:54, rendering his repetition of the victim's 7:59 statements at least double hearsay. But that does not alter the fact that Troseth recounted the victim's 7:59 statements—*viz.*, there is, and would be, no qualitative distinction for *hearsay* purposes

between Troseth's testifying that (1) "At 7:59, the victim said that she was going to meet the defendant at the Mobil station" or (2) "I told defendant that at 7:59 the victim said that she was going to meet the defendant at the Mobil station." To the extent that the second statement was offered for the truth of the victim's statement that she was going to meet defendant at the Mobil station, it would be indistinguishable, for hearsay purposes, from the first. *See* OEC 805 (hearsay within hearsay is admissible only if each part falls within a hearsay exception).

There *would* be a distinction between the two statements if the second were not offered to establish the truth of the victim's 7:59 statement.[13] But here, the state's harmless error argument depends on the premise that the jury could consider Troseth's recounting of the victim's conversation with her mother for the truth that the victim was, in fact, going to meet defendant at the Mobil station at around 8:00.

In sum, the trial court's *in limine* ruling rendered admissible, *for its truth*, precisely that aspect of Troseth's testimony that is the core of the state's present harmless error argument—the victim's statement at 7:59 that she was going to meet defendant at the Mobil station. The assignment of error explicitly challenges that *in limine* ruling. But for the trial court's error in that regard, the jury could not have considered Troseth's recounting of the victim's conversation with her mother for the truth that she was going to the Mobil station to meet defendant. Consequently, the court's erroneous, unrestricted admission of Troseth's recounting of the victim's 7:59 statements, which permitted the jury to consider those statements for the truth of the matter asserted, was encompassed within the ambit of the sixteenth assignment of error.[14]

■ We turn then to the second subsidiary inquiry: Did defendant's particular listing of where the challenged

---

[13] *See, e.g.,* the description of Judge Bonebrake's ruling in response to defendant's hearsay objection on virtually identical testimony given during the August 1993 pretrial release hearing. 184 Or App at 301-02.

[14] Again, if Judge Alexander in the *in limine* hearing had ruled as did Judge Bonebrake in the pretrial release hearing, the crucial aspect of Troseth's testimony would have been admissible, *but not for its truth.*

evidence was erroneously admitted operate to somehow restrict his assignment of error or otherwise waive any objection on appeal to the unrestricted admission of Troseth's testimony describing his 9:54 conversation with defendant to the extent that that testimony recounted the victim's statements to her mother at 7:59 p.m.?

■     We note, at the outset, that the text of ORAP 5.45 (2000) does not require a party assigning error to a categorical *in limine* ruling to identify any instance in which the challenged evidence was subsequently admitted at trial. Rather, the rule speaks only to identifying the *"ruling that is being challenged."* ORAP 5.45(4) (2000) (emphasis added). If the categorically admitted evidence is subsequently offered and admitted without further objection, there is no additional "ruling" to identify. Thus, if defendant's sixteenth assignment of error had been silent as to where the disputed evidence was admitted at trial, it would have complied with ORAP 5.45 (2000).

That is not to say, however, that appellants may not have a *prudential* obligation, albeit beyond the precise contours of the assignment of error, to identify where and how categorically admitted evidence was ultimately received at trial. Such information is crucial to the reviewing court's assessment of whether an evidentiary error was prejudicial; for example, if evidence ruled admissible before trial was never received at trial, no prejudice could flow from the pretrial ruling. Thus, an appellant who fails to provide such vital information does so at unconscionable peril. *Cf. York v. Bailey*, 159 Or App 341, 347-48, 976 P2d 1181, *rev den*, 331 Or 287 (1999) (although neither party to an appeal has a "burden" to demonstrate the harmfulness or harmlessness of evidentiary error, a party seeking reversal based on evidentiary error has the functional burden of designating an adequate record on appeal from which the court can assess whether an error was prejudicial).

The concern here, however, is somewhat different. Although defendant was not obligated under ORAP 5.45 to include the additional references to the transcript in his assignment of error, he did so. Did that inclusion operate to

somehow limit the ostensible scope of defendant's assignment of error—or, concomitantly, to waive any appellate objection to all other evidence otherwise encompassed within the assignment?

We cannot, and do not, purport to give a categorical answer because circumstances may vary dramatically. Consider two relatively common hypothetical situations: In Case 1, the appellant moved *in limine* to exclude five distinct types of evidence based on five different legal theories, which were so identified in the *in limine* motion, and the trial court denied that motion by a general order that did not separately address each type of evidence and legal argument. On appeal, the appellant assigns error to the general ruling but goes on to complain about only two of the types of evidence as being improperly admitted. In Case 2, the appellant moved *in limine* to exclude all evidence pertaining to a particular subject based on a single legal theory, and the trial court generally and categorically denied that motion. On appeal, the appellant assigns error to that ruling and then, in the brief, identifies most, but not all, of the instances in which the similar evidence subject to the motion *in limine* was admitted at trial.

The first hypothetical situation evinces a limitation of the scope of the assignment of error. Although the ruling to which error was assigned covered several qualitatively different types of evidence, the appellant limited its argument to only some of those types of evidence—and there is no logical tension between challenging the exclusion of some types of evidence while failing to challenge the exclusion of other, qualitatively different, evidence.

Conversely, the second hypothetical is not so amenable to being deemed an implied limitation or waiver. That is so because the challenged ruling holistically addressed the admissibility of qualitatively substantively similar evidence, albeit from different sources. Logically, it makes no sense that a party who challenges a ruling categorically admitting all evidence pertaining to a particular subject, and who

identifies some, but not all, testimony encompassed within that ruling, would—by its failure to mention the other evidence—intend to forego or waive its objections to the other evidence pertaining to the same subject. Although "waiver" is defined somewhat differently for different purposes, *see, e.g., State v. Hunter*, 316 Or 192, 201, 850 P2d 366 (1993) (waiver "is an intentional relinquishment or abandonment of a known right or privilege. Although a waiver must be intentional, there is no particular formula for determining whether a waiver has occurred."), it would be utterly incongruous for a party to "waive" an argument that the error of which it complains is reversible. Such an implied waiver is entirely implausible when considered in light of the state's "harmless error" argument here: If the state is correct, defendant not only inexplicably abandoned a meritorious challenge to Troseth's testimony, which was otherwise encompassed within the assignment of error, but also, in doing so, *rendered the assigned error harmless*.[15]

Given those considerations, we conclude that defendant's failure to include Troseth's testimony regarding the 9:54 call in his identification of "improper evidence" did not exclude that testimony from the scope of the assignment of error—and, thus, from the scope of our disposition in our original opinion. The critical aspect of that testimony for the purposes of the state's harmless error argument—the recounting of what the victim told her mother at 7:59—is identical in substance to the other evidence also admitted by virtue of the erroneous *in limine* ruling. It is inadmissible under OEC 803(2) for the same reasons that the other evidence is inadmissible. In short, our disposition of defendant's sixteenth assignment of error in our original opinion encompassed Troseth's description of the victim's statements both directly and in recounting the 9:54 conversation. Because the

---

[15] We note further, and finally, the unusual procedural posture of this case: The state did not invoke Troseth's testimony as the basis for a harmless error argument until it petitioned for reconsideration. Presumably, if the state had first raised its present harmless error argument in its respondent's brief, defendant would either have moved to modify his assignment of error's listing of improperly admitted evidence to include the now-disputed Troseth testimony or would have offered argument in his reply brief as to why the assignment of error encompassed that testimony.

admission of that evidence was part of the error, it cannot be the basis for a claim of harmless error.

■     We proceed finally, and briefly, to the state's evidentiary harmless error argument pertaining to Detective Ayers's testimony. Ayers testified that, when he interviewed defendant late on the evening of the murder, he told defendant "that it was my understanding that [the victim] and he were going to meet at the Mobil Station in West Slope and to exchange the kids." Ayers further stated that defendant denied that that was the case, and told him that the victim was supposed to come to defendant's apartment to pick up the children. The state argues that Ayers's testimony that he understood that defendant and the victim planned to meet at the Mobil station was cumulative to the evidence from the 7:59 telephone call. We disagree. Ayers's testimony did not identify where he got the "understanding" that the victim planned to meet defendant at the Mobil station. It could, in fact, have been viewed by the jury either as speculation on Ayers's part or, perhaps, as an "understanding" that Ayers gained from reading the 8:00 handwritten notation by the victim concerning the Mobil station. Most significantly, though, Ayers's testimony provided the jury with no information that *the victim* had actually *told* someone that she was planning to meet defendant at the Mobil station shortly after 8:00. Thus, the inadmissible hearsay identified in our previous opinion cannot be said to have been "cumulative" to Ayers's evidence, because Ayers's testimony lacked the specificity—and the probative value—of the erroneously admitted hearsay.

Respondent's petition for reconsideration allowed; opinion adhered to.

**EDMONDS, J.,** dissenting.

The majority holds that encompassed within defendant's sixteenth assignment of error is the trial court's ruling that admitted into evidence the testimony of Marvin Troseth regarding his conversation with defendant at 9:54 p.m. on September 21, 1986. I disagree with that conclusion for the reasons that follow.

The assignment of error states,

"[Defendant] assigns error to the ruling allowing two September 21, 1986 oral hearsay statements and one hand-written note by Cheryl Cunningham into evidence under an excited utterance exception to the hearsay rule, OEC 803(2). [Defendant's] objections occurred at CR 175. The court's ruling occurred at [CR 196, p. 4-5]. The improper evidence was admitted at TR Vol 8: p. 58, (line 23) through p. 59 (line 19); p. 61 (line 13) through p. 61 (line 6); p. 90 (line 3) through p. 91 (line 5), and State's Exhibit 7 (TR Vol 8 at 158)."

Pursuant to his assignment of error, defendant argues,

"The two alleged September 21, 1986 phone conversations between Cheryl Cunningham and her family members, as well as the note she purportedly penned on the same date, do not qualify as excited utterances under OEC 803(2), and were also not relevant to prove [defendant's] conduct on the night his wife was killed."

(Emphasis omitted.)

Defendant's assignment of error and argument under the assignment could not be more precise.[1] The first sentence of the assignment of error refers to two oral statements and a handwritten note made by Cheryl Cunningham, the victim. The sentence makes no reference to evidence of a conversation between Troseth and defendant. Moreover, the sentence asserts that the ruling admitting that evidence was error under OEC 803(2), the excited utterance exception to the prohibition against hearsay. The state does not contend that the conversation between Troseth and defendant constituted an excited utterance. The following sentences in the assignment of error inform the reader where in the record the objection occurred, where in the record the court's ruling occurred, and where in the record the evidence was admitted. Those references, as the majority correctly concedes, do not include a transcript reference to Troseth's testimony. For all of those reasons, the majority's attempt to include Troseth's testimony within the language of the sixteenth assignment of

---

[1] ORAP 5.45(3) provides that "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged."

error amounts to nothing more than a legal fiction. Consequently, the majority errs when it holds that the sixteenth assignment of error encompasses the ruling regarding Troseth's testimony.

There is another issue lurking in this case that the majority does not address and which, I think, presents a closer question. That issue is whether, under the rules of appellate procedure, it is permissible for the state to raise for the first time in a petition for reconsideration the issue of whether the admission of the evidence of the 7:59 conversation was harmless. The state did not rely on Troseth's testimony as the basis of its harmless error argument in its response brief on appeal. Instead, the state argued, in part:

"Defendant finally argues that the admission of this evidence could not be harmless error because the hearsay statements were the focal point of the trial. (App Br 112-13). The state agrees. If the trial court erred in admitting this evidence, reversal is required because this evidence was the most compelling introduced against defendant."

This court can hardly be faulted for taking the state at its word when it conceded that if the trial court erred in admitting the evidence, reversal is required.

There is some authority that suggests that the state should not be permitted to raise an issue for the first time on reconsideration, particularly, when it has conceded to the contrary on appeal. In *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 380, 823 P2d 956 (1991), the Supreme Court held that the failure of the plaintiff to raise an issue until his reply brief on appeal violated the version of ORAP 5.45(2) that was then in effect. The rule provided that a claim of error would not be considered by an appellate court unless the error was raised in the complaining party's opening brief. *Ailes,* 312 Or at n 4. The purpose of the rule is to ensure that the opposing party has an opportunity to submit a written response to the claim of error. Presently, ORAP 6.25(1) implicitly has the same limitation when it provides for purposes of this case that a "petition for reconsideration shall be based on[, among other things, a] claim that the Court of Appeals erred in construing or applying the law." It is arguable under the language of the rule that a claim of harmless error made for the

first time on reconsideration is not cognizable for purposes of review because it is not a claim that the Court of Appeals has *previously* "erred in construing or applying the law." If the rule is construed as its language suggests, the majority's result is correct; only its reasoning is wrong-headed.

The state is candid in its position regarding these concerns:

> "As argued in detail below, the evidence in question was admissible under both the excited-utterance and state-of-mind exceptions to the hearsay rule, and its admission, even if it had been erroneous, was patently harmless.
>
> "Before turning to those arguments, however, *the state must acknowledge that the court's errors were not entirely of its own making. First, the state did not argue that the admission of the evidence, if erroneous, was harmless. To the contrary, the state concluded that it was not.* * * *
>
> "* * * * *
>
> "None of those explanations makes it easier for the state to come to the court now and assert that the court erred on both of those grounds. But as this court knows without being reminded, reversing a murder conviction is serious business under any circumstances. And *this court has a constitutionally imposed responsibility to uphold the judgment of conviction unless the trial court erred and that error prejudiced defendant.* Consequently, the state can do no more than submit this petition, accept its share of responsibility, and trust that the court will find its way to the correct legal answer."

(Emphasis added.)

The state is correct about this court's constitutional responsibility. This court has a mandatory constitutional obligation to uphold defendant's conviction in this case in the absence of prejudicial error. Article VII (Amended), section 3, of the Oregon Constitution provides, in relevant part,

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

"No discretion is permitted by the mandate of the amendment." *State v. Van Hooser*, 266 Or 19, 24, 511 P2d 359 (1973). If there is substantial and convincing evidence of guilt and the error committed was unlikely to have changed the result of the trial, *Van Hooser*, 266 Or at 25-26, the public interest in affirmance of a criminal conviction as expressed under section 3 trumps any violation of a procedural rule. In other words, we are charged by the constitution to give effect to section 3's mandate, even though the state has asserted that the error was harmless for the first time on reconsideration.[2]

In this case, there is substantial and convincing evidence of guilt without the admission of the evidence of the 7:59 phone call from the victim to her family members, and the error was unlikely to have affected the result of the trial. Troseth testified that he informed defendant that the victim told him and the victim's mother that the victim was "supposed to meet [the defendant] down at that Mobil station." Defendant responded, according to Troseth, "No, she was suppose to come up here." Detective Ayers testified to a similar response by defendant when he talked with him. Because Troseth's and Ayers's testimony evidenced the same statement made by the victim that was also established by the inadmissible evidence of the 7:59 phone call, *i.e,* that the victim had said that she contemplated meeting defendant at the Mobil station, that testimony was the equivalent of the erroneously admitted evidence.

In addition, the other evidence supporting defendant's guilt is extensive. Defendant and the victim were in the midst of a bitter divorce in which both parties wanted custody of their children. *State v. Cunningham*, 179 Or App 359, 363, 40 P3d 1065 (2002). Defendant told friends that the victim had lied during depositions and that she was not a fit mother, and he had even informed one friend that he would kill her. *Id.* at 364. He also told the victim herself that she would pay for her statements during a deposition and that he

---

[2] The state's earlier concession is troubling. On balance, however, there is no obligation on our part to accept it. Rather, our duty is to uphold the constitution and laws of this state. *State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000) (Court of Appeals did not have the authority to consider an unpreserved claim notwithstanding the states concession that defendant had preserved the claim).

would get her. *Id.* Defendant also informed his then-girlfriend that, "when somebody killed one parent but the other parent wasn't convicted of something" it was better for the children. *Id.* at 365. Moreover, the written notations made by the victim on the night of the murder indicated that she had talked to defendant about the children and that she was going to the Mobil station near where she was found murdered. *Id.* at 366. Defendant was not in his apartment at the time of the murder and later told inconsistent stories as to his whereabouts. *Id.* at 367-69. When all of the evidence is considered, including Troseth's and Ayers's testimony, there is substantial and convincing evidence of defendant's guilt and there is little likelihood that the admission of the evidence of the 7:59 p.m. phone call affected the jury's resulting verdict.

In summary, the majority errs when it holds that defendant's sixteenth assignment of error encompasses Troseth's testimony. The assignment refers only to statements made by the victim and admitted as excited utterances. Although the state's argument first made on reconsideration violates ORAP 6.25(1)(e), Article VII (Amended), section 3, of the Oregon Constitution compels that we grant reconsideration and affirm defendant's conviction for murder.

For the above reasons, I dissent.