Argued and submitted May 4, decision of the Court of Appeals reversed, and case
remanded to the Court of Appeals for further proceedings October 21, 2004
See 197 Or App 264 (2005)

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# BRADLY MORRIS CUNNINGHAM, SR.,
*Respondent on Review.*

## (No. C930434CR; CA A87792; SC S50010)

99 P3d 271

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

George Kelly, Eugene, argued the cause and filed the brief for respondent on review.

James E. Mountain, Jr., of Harrang Long Gary Rudnick, P. C., Portland, filed briefs on behalf of *amicus curiae* Garvey Schubert Barer. With him on the briefs were Robert C. Weaver, Jr., and Garvey Schubert Barer.

Before Carson, C. J., and Gillette, Durham, Riggs, De Muniz, and Balmer, JJ.**

BALMER, J.

---

## BALMER, J.

The issue in this criminal case is whether the trial court properly admitted certain testimony at defendant's trial under the excited utterance exception to the hearsay rule. The trial court concluded that statements that the victim had made to her mother during a telephone call shortly before the victim's death were admissible under OEC 803(2), which provides an exception to the general rule that hearsay is inadmissible in Oregon trials.[1] A jury convicted defendant of murder, and he appealed, alleging numerous assignments of error. The Court of Appeals reversed and remanded, holding that the trial court had erred by admitting the testimony in question and that that error was not harmless. *State v. Cunningham*, 179 Or App 359, 40 P3d 1065 (*Cunningham I*), *adh'd to on recons*, 184 Or App 292, 57 P3d 149 (2002) (*Cunningham II*). We allowed the state's petition for review and now reverse the decision of the Court of Appeals.

### FACTS AND PROCEDURAL BACKGROUND

Because the jury convicted defendant, we review the evidence in the light most favorable to the state. *State v. Barone*, 329 Or 210, 212, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000). We first recite the facts necessary to determine the issue before us and later describe them in greater detail as needed to address the parties' legal arguments.

On September 21, 1986, defendant's wife, Cheryl Keeton Cunningham (the victim), was found beaten to death in her van on Highway 26, near Portland. She had died sometime between 8:00 p.m. and 8:30 p.m. The relationship between the victim and defendant had grown increasingly rancorous in the months leading up to the victim's murder. In February 1986, the victim had filed for divorce, and the

---

[1] OEC 802 provides:

"Hearsay is not admissible except as provided in [OEC 801 to 806] or as otherwise provided by law."

OEC 803(2) provides that the general prohibition against hearsay in OEC 802 does not include:

"[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

divorce trial was to begin in early October. Both parties had sought custody of their three sons, and, pending the divorce proceeding, the victim and defendant had shared custody of the children. The victim had decided to seek sole custody of the children following a bitter public argument with defendant over which school one of the children should attend. Under the visitation schedule, defendant had custody of the children from 7:00 p.m. Friday nights to 7:00 p.m. Sunday nights.

On Friday, September 19, 1986, defendant had picked the children up from the victim's house. Defendant was angry at the victim and accused her of having lied during depositions taken during the previous week in preparation for the impending divorce trial. On Saturday, September 20, defendant took the children to a soccer game in which the oldest son was playing. The victim also attended the game, but defendant, upon seeing her there, became upset and took the children to the other side of the field to prevent them from speaking to her. That action upset the victim, who told a friend at the game that defendant did not want her there and that he had threatened her.

On Sunday, September 21, 1986, the victim telephoned her mother at 7:11 p.m. and told her that defendant had called to say that he could not return the children to her at 7:00 p.m. as scheduled because he was having gas problems with his car. The victim also told her mother that defendant had refused to tell her where he was. At defendant's trial, the victim's mother testified that the victim had been "hysterical" during their conversation and had said that she might call the police.

At approximately 7:30 p.m. the victim had a telephone conversation with her brother, Jim Karr, during which she was upset and crying. She told him that defendant had not brought the children home yet and that he claimed to be having car trouble, which she described as a "typical maneuver."

At 7:59 p.m., the victim again called her mother. At trial, the victim's mother testified that

"[the victim] was very stern and she said, 'Mother, I want you to remember this. I'm going down to the Mobil station by the IGA store, ah, down the hill. * * * And I'm going to meet Brad and pick up the children. And I want you to remember this.' And she was real stern about it. * * *

"I * * * told [Marvin Troseth (mother's boyfriend at the time, whom she later married)] to come over by the phone, and I repeated what she said to me. And she repeated it again, and I said it to him so he would know where she was going. * * *

"I said, 'Please, please don't go alone. Please wait and let us come up there and go with you. We can get there in 45 minutes or so. We'll go with you.' * * * [The victim] said, 'No, I cannot leave the kids in the car any longer. I have to go pick up my kids.' And that was it."

In addition to the testimony regarding the telephone calls, the state also introduced a piece of paper with notations in the victim's handwriting that was found in her house and that described the same events that the victim had discussed with her mother, although not in the same detail. The note stated:

"7:10 pm—'I'm having gas problems.'

—I asked where boys were & said I'd pick them up.

—He says-'I'll handle it & hangs up.[']

"8:00    SW Canyon Lane—IGA mkt

—at IGA—at Mobil (though closed)"

Before trial, defendant moved *in limine* to exclude as hearsay the victim's statements made during the two telephone calls to her mother on the evening of her murder and the victim's handwritten notes.[2] The court held an omnibus hearing at which the state argued that, although the victim's statements to her mother during the two telephone calls were hearsay, those statements were admissible either as evidence of the victim's state of mind or as excited utterances. Defendant claimed that those statements did not satisfy the requirements of either exception to the hearsay rule and

---

[2] The Court of Appeals provided a thorough description of the procedural history of this case in *Cunningham II*, 184 Or App at 295-97.

therefore should be excluded at trial. The trial court denied defendant's motion and concluded that all the statements that the victim had made during the telephone calls, as well as her handwritten notes, were admissible as excited utterances. As noted, a jury convicted defendant of murder.

On appeal, defendant assigned error to, *inter alia*, the admission of that hearsay evidence.

The Court of Appeals held that the trial court correctly determined that evidence of the 7:11 p.m. telephone call was admissible under OEC 803(2) as an excited utterance. *Cunningham I*, 179 Or App at 377, 378.[3] The Court of Appeals also held that the piece of paper containing the victim's notations about the two telephone calls had been offered as a single item of evidence. *Id.* at 373-74. The court then determined that the first notation, written in close proximity to the victim's 7:11 p.m. telephone call to her mother, was admissible as an excited utterance. *Id.* at 378. Because defendant had not objected separately to the second notation regarding the later telephone call, the court held that the trial court properly had admitted the entire note into evidence. *Id.* at 378-79. Finally, the Court of Appeals concluded that the trial court had erred in determining that the victim's statements during the 7:59 p.m. telephone call to her mother qualified as an excited utterance and therefore were admissible as an exception to the hearsay rule under OEC 803(2). *Id.* at 381. After determining that that error was not harmless, the court reversed and remanded. *Id.* at 383.

The state petitioned for reconsideration on the ground that, in analyzing the contents of the 7:59 p.m. telephone call, the Court of Appeals had misconstrued and misapplied OEC 803(2). In the alternative, the state asserted that (1) the court should have held that the victim's statements from the 7:59 p.m. telephone call were admissible under OEC 803(3), the state-of-mind exception to the hearsay rule; and (2) any error in admitting those statements was harmless because other unchallenged testimony established the same inference as the content of that telephone call,

---

[3] Defendant does not challenge the admissibility of the 7:11 p.m. call; consequently, that issue is not before this court, and we do not address it.

namely, that the victim was going to meet defendant at the gas station. The Court of Appeals, without discussion, adhered to its original determination that the victim's statements in the 7:59 p.m. telephone call did not fall within the excited utterance exception to the hearsay rule. *Cunningham II*, 184 Or App at 295. The court also declined to consider the merits of the state's argument regarding the admissibility of those statements under the state-of-mind exception, because it concluded that the state had not raised that argument properly under ORAP 6.25(1). *Id.* Finally, the court rejected the state's argument that the error was harmless. *Id.* at 308-09.

## ADMISSIBILITY OF THE
## VICTIM'S HEARSAY STATEMENTS

■ On review, the state first contends that defendant failed to preserve his objection to the hearsay evidence regarding the victim's statements to her mother during the second, 7:59 p.m., telephone call, because he did not object to that evidence separately from the evidence regarding the first, 7:11 p.m., telephone call. We have considered the state's preservation argument, and we reject it. The trial court proceedings make it clear that defendant properly objected to the hearsay testimony regarding the second telephone call. We now turn to that issue.

■ The critical question on review is whether the trial court properly admitted the hearsay statements that the victim made to her mother during the 7:59 p.m. telephone call under the excited utterance exception of OEC 803(2). As a general rule, hearsay evidence is inadmissible in Oregon. OEC 802. Neither party disagrees that the statements that the victim made to her mother during the 7:59 p.m. telephone call were hearsay. The state offered the victim's out-of-court statements to her mother to prove the truth of the matter asserted: that the victim went to meet defendant at a closed-down gas station located a short distance from where she subsequently was found dead. That was hearsay. *See* OEC 801(3).

■ ■ Because the statements were hearsay, they were inadmissible unless they fall within an exception to the hearsay rule. As stated above, OEC 803 provides, in part:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"\* \* \* \* \*

"(2)   A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In *State v. Carlson*, 311 Or 201, 808 P2d 1002 (1991), this court discussed that so-called "excited utterance" exception in detail and explained that, for statements to fall within its scope, the trial court must conclude by a preponderance of the evidence that three elements are satisfied: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of the excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition. 311 Or at 209, 215 (citing Laird C. Kirkpatrick, *Oregon Evidence* 533 (2d ed 1989)). This court also noted that whether the evidence satisfies those conditions is a preliminary question of fact for the trial court to determine under OEC 104(1).[4] *Id.* at 216.

In *Carlson*, the trial court had admitted a hearsay statement over the defendant's objection without making findings on the preliminary questions of admissibility under OEC 104(1). *Id.* at 216. This court therefore assumed that the trial court had concluded that the evidence established the three predicate facts—that a startling event had occurred, that the declarant had made the statement while under the stress of the excitement caused by the event, and that the declarant's statement had related to the event. *Id.* The court then considered whether evidence existed in the record to support those facts, concluded that it did, and accordingly held that the trial court had not erred in admitting the testimony. *Id.* at 218-19.

---

[4] OEC 104(1) provides:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section [instructing court how to determine relevancy of evidence that depends upon the fulfillment of a condition of fact]. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

Although *Carlson* outlined the requirements that evidence must meet for admission under the excited utterance exception to the hearsay rule, that case did not discuss explicitly the standard that an appellate court should employ in reviewing a trial court ruling that a statement constitutes an excited utterance under OEC 803(2). Because this court's prior holdings on that issue are less clear than they might be, we pause to consider that question before examining whether the factual predicates identified in *Carlson* have been met in this case.

This court has noted that some trial court evidentiary determinations are reviewed for errors of law, while others are reviewed to determine whether the trial court abused its discretion. In *State v. Titus*, 328 Or 475, 982 P2d 1133 (1999), for example, this court held that a determination of relevance under OEC 401 "can yield only one correct answer; evidence either is relevant or it is not." *Id.* at 481. Because the trial court has no discretion to label as irrelevant evidence that meets the standard of relevance of OEC 401, appellate courts review determinations of relevance for errors of law. *Id.* In contrast, the question whether relevant evidence should be excluded under OEC 403 because its probative value is substantially outweighed by the danger of unfair prejudice or other factors is reserved to the trial court's discretion. *Id.* "[I]n some cases, the record may support either the admission or exclusion of otherwise admissible evidence under OEC 403, and neither result legally would be incorrect." *Id.* As to those evidentiary determinations, an appellate court reviews the trial court decision for abuse of discretion. *Id.*

In *State v. Rogers*, 330 Or 282, 4 P3d 1261 (2000), this court again examined the distinction between trial court evidentiary determinations that are reviewed for errors of law and those that are reviewed for abuse of discretion. At issue in *Rogers* was the trial court's determination that the defendant's expert witness, a neuropsychologist, was not qualified under OEC 702 to testify about possible causes of a frontal lobe dysfunction that he had detected in the defendant's brain. *Id.* at 308-09. Elaborating upon the discussion in *Titus*, this court noted that, if the application of the proper principles of law can lead to only one legally correct outcome,

then an appellate court reviews the trial court ruling without deference to the trial court to determine whether the trial court erred; on the other hand, if the application of those principles can lead to more than one correct outcome, then the trial court ruling is examined to determine whether the trial court abused its discretion in choosing an outcome. *Id.* at 312. The court in *Rogers* distinguished a trial court's *legal* ruling on the admissibility of disputed evidence, which is reviewed under one of the two standards just discussed, from the preliminary *factual* determinations that a trial court may be required to make under OEC 104(1) as predicates for its legal ruling. *Id.* at 313 n 9. As to those factual determinations, the appellate court "reviews the record to determine whether any evidence supports the trial court's ruling." *Id.* Applying that analysis, this court in *Rogers* concluded that an appellate court "reviews without deference for errors of law whether a trial court properly applied OEC 702 to decide whether an expert is qualified to give testimony relative to a particular topic, because that determination is a question of the application of law." *Id.* at 315 (emphasis omitted).

This court has not applied the analysis used in *Titus* and *Rogers* explicitly to the excited utterance exception to the hearsay rule. However, this court's decision in *Carlson*, the most recent discussion of OEC 803(2), is consistent with those cases. As noted previously, in *Carlson*, this court identified three factual requirements that must be satisfied for a hearsay statement to be admissible as an excited utterance. This court further held that, under OEC 104(1), the trial judge "must determine whether the proponent of the evidence has established that the three requirements * * * have been met." 311 Or at 216. In *Carlson*, this court reviewed the record to determine whether there was evidence to support "the necessary predicate facts," *id.*, and concluded that there was. *See* 311 Or at 217-19 ("evidence in the record" supported the conclusion that, more likely than not, declarant had experienced a "startling event," her "accusatory statement was made while she was under the stress of excitement caused by the event," and her "statement related to the event"). Because evidence in the record supported those required factual predicates, this court held that the trial court had not

erred in ruling that the declarant's statement was admissible under the excited utterance exception to the hearsay rule. *Id.*

■    Implicit in this court's decision in *Carlson* is the conclusion that there is only one legally correct answer to the question whether a statement is admissible as an excited utterance. The trial court finds the facts that underlie the application of OEC 803(2), and those findings will not be disturbed if evidence in the record supports them. However, the ultimate legal issue—whether the requirements of OEC 803(2) have been met and the hearsay statement is therefore admissible as an excited utterance—is a question of law as to which there is only one legally correct outcome. Like this court's holding in *Titus* that evidence is either relevant or it is not, we conclude that a statement is either an excited utterance under OEC 803(2) or it is not. It follows that an appellate court reviews the trial court's legal conclusion that a statement is or is not an excited utterance to determine whether that ruling was an error of law.

We recognize that some commentators assert that a trial court determination that a statement is (or is not) an excited utterance should be reviewed for abuse of discretion. *See, e.g.,* Clifford S. Fishman, 4 *Jones on Evidence: Civil and Criminal* § 28:8, 620 (7th ed 2000) ("The appropriate standard of appellate review of a judge's decision to admit a statement as an excited utterance * * * is abuse of discretion."). For the reasons set out above, we disagree that that standard of review applies to determinations under OEC 803(2). We also note that some of this court's cases that predate the adoption of the Oregon Evidence Code, while rejecting the view that the trial court has "absolute discretion" in ruling on the admissibility of excited utterances, nevertheless state that " 'the trial judge must be given considerable lee-way of decision.' " *Zeller v. Dahl,* 262 Or 515, 518, 499 P2d 1316 (1972) (citing *Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 564, 447 P2d 285 (1968), quoting *McCormick on Evidence* § 272, 580). Our holding in this case appropriately gives the trial court "considerable lee-way" in determining the predicate facts under OEC 104(1), as to which our review is limited to whether evidence in the record supports the trial court's ruling. *See Rogers,* 330 Or at 313 n 9 (applying that standard as to factual predicates for determining qualifications of expert

witness under OEC 702). That standard is consistent with the traditional deference accorded to the trial court in making factual determinations. As stated above, however, and consistent with the analysis in *Titus* and *Rogers*, that deference does not extend to the trial court's legal conclusion that a statement is or is not an excited utterance under OEC 803(2). As noted, we review that legal conclusion to determine whether the trial court has made an error of law.

■ With that standard of review in mind, we turn to the trial court's factual findings and legal ruling regarding the disputed statements at issue in this case. In contrast to *Carlson*, in which the trial court made no specific findings as to the preliminary questions of admissibility under OEC 104(1), in this case we have the benefit of the trial court's findings as set out in its order:

> "I find that the decedent was under the stress of excitement caused by the constantly escalating dissolution proceedings. Her conduct in the days and weeks leading up to this event demonstrates a much higher degree of stress and concern than is found even in difficult dissolution cases. Her emotional condition had deteriorated significantly, and I am satisfied the statements were made while Ms. Cunningham was under that stress.

> "Next, the State must have a triggering event or incident just prior to the statements. I find that the sudden change in plans for delivery of the children from visitation with defendant is sufficient evidence of a triggering event. The statements made during the phone conversations and the notes written on the pad are directly in response to defendant's phone conversations with decedent that same day regarding the children and provide the second element of the rule.

> "Finally, the statements made to each relative and the written notes relate to Ms. Cunningham's condition, i.e., the stress from dealing with defendant and a highly acrimonious custody dispute."

We must determine whether evidence in the record supports the factual findings that the trial court made regarding the victim's 7:59 p.m. telephone call to her mother. As part of that consideration, we view the record consistently with the trial court's ruling that those statements constituted

excited utterances, accepting reasonable inferences and reasonable credibility choices that the trial court could have made. *See Carlson*, 311 Or at 214 (citing *State v. Stevens*, 311 Or 119, 127, 806 P2d 92 (1991), and *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968)).

The first requirement for a hearsay statement to qualify as an excited utterance is the existence of a startling event or condition.[5] Here, the trial court found that defendant's sudden change of plans for delivering the children "triggered" the victim's statements in her telephone calls to her mother and the notes that were written in her handwriting. The court did not specify whether it considered defendant's first telephone call to the victim—telling her that the children would not be returned on time because his car was having gas problems and refusing to tell the victim where he and the children were—or the second call, in which defendant asked the victim to meet him at a nearby, closed-down gas station, or both calls taken together, to be the startling event. However, viewing the record consistently with the trial court's ruling, we conclude that that court found both of defendant's telephone calls taken together to constitute the "startling event" for purposes of the 7:59 p.m. telephone call.

■ In determining whether a particular event is sufficiently startling, this court has stated that "the standard is primarily subjective, *i.e.*, the trial judge should look primarily to the effect [of the event or condition] upon the declarant." *Carlson*, 311 Or at 217 (brackets in original; internal quotation marks omitted). In *Carlson*, this court noted that, because the focus is on the effect of an event on an individual declarant, the " 'fact that some individuals might not have been excited by the incident does not bar admission under the [excited utterance] exception.' " *Id.* (quoting Paul R. Rice, *Evidence: Common Law and Federal Rules of Evidence* 517 (2d ed 1990)).

---

[5] As discussed previously, *Carlson* holds that the determination that a "startling event or condition" existed is a question of fact, and our analysis here is consistent with *Carlson*. The existence of a "startling event," however, is identified in OEC 803(2) as one requirement that must be met before a court may conclude that a statement is an excited utterance. That conclusion, as we have noted, ultimately is a question of law. We recognize that a trial court could make subsidiary findings of fact that are supported by the record and nevertheless err in concluding that those facts demonstrate that the statement in question qualifies as an excited utterance for purposes of OEC 803(2). That is not the case here.

As described above, the trial court found that the victim had been under increasing and substantial stress in the time period leading up to the night of her murder as a result of her escalating divorce proceedings and that her emotional condition had deteriorated significantly. The evidence in the record amply supports those findings. The Court of Appeals described many of the details of the acrimonious dissolution proceedings and increasing hostility between the victim and defendant. *Cunningham I*, 179 Or App at 362-65. Although those ongoing stressful conditions did not, in themselves, constitute a "triggering" event or condition, they do create a context for evaluating the victim's mental and emotional state at the time that she made the statements at issue. That is relevant for establishing whether the "triggering event" that the trial court identified had a subjectively startling effect on the victim, such that her subsequent comments qualified as excited utterances.

In its opinion, the Court of Appeals first decided that, given the context of the custody dispute, defendant's initial telephone call to the victim (refusing to reveal his and the children's location, claiming gas problems, and changing the meeting time) constituted a startling event for purposes of the 7:11 p.m. telephone conversation. *Cunningham I*, 179 Or App at 375. However, with respect to the victim's 7:59 p.m. telephone call to her mother, the court apparently determined that defendant's second telephone call to the victim (instructing her to meet him at the closed-down station) had been the only "startling event" before the victim's statements and concluded that that call had been neither objectively nor subjectively startling. *Id.* at 379.

We disagree with that analysis. In our view, the trial court's finding that the startling event had been the "sudden change in plans for delivery of the children from visitation with defendant" encompassed both defendant's first and second telephone calls to the victim, because both telephone calls were parts of the change in the original plan, that is, that defendant would drop the children off at the victim's house at 7:00 p.m. Evidence in the record supports the conclusion that the startling effect of defendant's first telephone call continued after the victim had made the 7:11 p.m. telephone call to her mother. For example, during the 7:30 p.m. telephone call from the victim to her brother, the victim was

upset and crying. She also described defendant's claim that he was having car trouble as a "typical maneuver," a comment that appears to express skepticism that defendant's alleged car trouble was genuine. The fact that defendant then called back shortly before 8:00 p.m. and told the victim to meet him at a closed-down gas station not far from her house hardly would have had a reassuring effect on her in light of the circumstances and in the overall context of the victim's fear of defendant and his aggressive behavior towards her. *See Cunningham I*, 179 Or App at 363 (psychologist observed that victim seemed intimidated by defendant and did not want to be left alone with him and that defendant was "aggressive" and "bombastic").

The Court of Appeals portrayed defendant's proposal that the victim meet him at the gas station in a benign light, stating that "the second call related that the children would be returned shortly, albeit at a different place than originally planned." *Id.* at 380. We do not think that that description adequately captures the startling nature of that night's sequence of events. After calling the victim to tell her that he would not deliver the children at the appointed hour, defendant, who previously had threatened the victim, had called again to tell her to meet him at a location where they almost certainly would be alone—a strange request in itself, given the close proximity of the designated gas station to the victim's home and the fact that, less than an hour earlier, defendant had claimed to have car trouble. We are satisfied that, under that set of circumstances, and taking into account the victim's generally stressed state and her deteriorated emotional condition, the evidence supports the trial court's finding that the two telephone calls from defendant, taken together, caused the stress of excitement that precipitated the 7:59 p.m. telephone call to the victim's mother. Based on those findings and the trial court record, we further conclude that the two telephone calls from defendant to the victim constituted a subjectively and objectively startling event.

Next, we must consider whether the victim was under the stress of the excitement of that startling event at the time that she made the disputed statements and whether that event caused the victim's stress or excitement. *Carlson,*

311 Or at 218. As this court explained in *Carlson*, the traditional rationale for allowing excited utterances to be admitted over a hearsay objection is that the "excitement caused by the startling event or condition temporarily stills the capacity for reflection" and thus is likely to produce "statements free of conscious fabrication." *Id.* at 215 (citing Legislative Commentary to Oregon Evidence Code 154 (1981)). In other words, the spontaneity of a statement made under the stress of a startling event is used as an indicator that the statement is reliable. *See State v. Hutchinson*, 222 Or 533, 537, 353 P2d 1047 (1960) (stating same in regard to *res gestae*, doctrinal predecessor to excited utterance exception). Criteria that bear on the trial court's determination of the spontaneity of the utterance include "lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate." *Carlson*, 311 Or at 218 (internal quotation marks omitted).

Here, the Court of Appeals characterized the victim's demeanor during the 7:59 p.m. telephone call to her mother as "deliberate," and therefore not spontaneous, although the court admitted that "the only information we have about the declarant victim's demeanor during her second telephone call to her mother was that she was stern." 179 Or App at 380. The court continued, "[w]hile sternness is not necessarily inconsistent with the stress of excitement, it also is not necessarily indicative of the stress of excitement." Although certainly relevant, the victim's "stern" tone during the conversation at issue does not preclude a finding that she made the statements while under the stress of excitement. *See United States v. Alexander*, 331 F3d 116, 124 (DC Cir 2003) (trial court did not abuse its discretion by admitting evidence of 9-1-1 call in which declarant deviated only once from composed and monotone voice).[6] Indeed, defendant's

---

[6] OEC 803(2) is essentially identical to and is derived from Federal Rule of Evidence 803(2), the federal excited utterance exception. It is, therefore, permissible to look to federal cases in construing its Oregon counterpart. *See Carlson*, 311 Or at 209 n 8 (stating same in regard to OEC 104(1) and FRE 104(a)); *State v. Moen*, 309 Or 45, 58, 786 P2d 111 (1990) (looking to federal case law interpreting identical federal evidentiary rule, FRE 803(4), in interpreting OEC 803(4)).

tone was just as consistent with her being terrified by the further change in plans that defendant outlined to her in his second telephone call.

■ Moreover, the Court of Appeals equivocal description of the victim's demeanor highlights that court's error in holding that the trial court should not have admitted the victim's hearsay statement as an excited utterance. As we discussed in detail above, we review a trial court's legal conclusion that a statement is admissible as an excited utterance to determine whether it was legal error. However, the trial court's factual finding that the statement was made while under the stress of excitement caused by a startling event and that it related to the startling event is reviewed to determine whether evidence in the record supported the trial court's determination. *Carlson*, 311 Or at 219 (applying that standard of review).

Here, evidence in the record supports the trial court's determination that the victim's statement was made under the stress of excitement caused by the startling event. First, very little time elapsed between the event and the victim's statements. The victim called her mother almost immediately after speaking with defendant the second time, and the victim's two telephone conversations with defendant and her two telephone conversations with her mother took place over the course of less than an hour. *See State v. Moen*, 309 Or 45, 59-60, 786 P2d 111 (1990) (statement made to physician more than a week after startling event would have been admissible as excited utterance, although not offered under that exception to hearsay rule); *Alexander*, 331 F3d at 123-24 (upholding admission under excited utterance exception of statements made during 9-1-1 telephone call even though declarant called 15 to 20 minutes after startling event and had called mother before calling 9-1-1). Second, the content of the utterance indicates that the victim was under stress, in particular, her adamancy that she had to go get her children immediately and her refusal to wait for her mother. Neither were her statements made in response to any inquiry from her mother. We already have discussed the victim's mental condition, which the trial court described as being emotionally deteriorated. Finally, there was no evidence that the victim possessed a motive to fabricate the statement. Rather,

the victim appears to have been very interested in communicating the truth to her mother, and, indeed, there would have been little point in telling her mother of her plan to meet defendant had it not been true.

Based on those considerations, we conclude that evidence in the record supports the trial court's determination that the victim made the statements to her mother during the 7:59 p.m. telephone conversation while under the stress of excitement caused by the defendant's change in plans for returning the children.

■ The third and final prerequisite for the excited utterance exception is that the hearsay statement must relate to the startling event. Again, evidence in the record supports the trial court's findings on that issue. The trial court stated that the victim's statements to her mother related to her general "stress from dealing with defendant and a highly acrimonious custody dispute." The trial court found that "[t]he statements made during the phone conversations * * * [were] directly in response to defendant's phone conversations with [the victim] that same day regarding the children." The hearsay statements that the victim made to her mother during the 7:59 p.m. call described what action the victim was planning to take in response to the startling event, which consisted of both defendant's initial change in plans for delivering the children and his new plan to meet her at the gas station. As a consequence, evidence in the record supports the trial court's conclusion that the statements were "related to" that event, thereby satisfying the third condition of the excited utterance exception.

## CONCLUSION

■ It follows from the foregoing discussion that the trial court did not err in determining that the statements that the victim made during her second telephone call to her mother on the evening of her murder were admissible under OEC 803(2).[7] As a result, we must reverse the Court of Appeals

---

[7] Following the decision of the United States Supreme Court in *Crawford v. Washington,* 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), defendant filed a one-page memorandum asking this court to "review" *Crawford.* In *Crawford,* the Supreme Court held that the Confrontation Clause of the Sixth Amendment barred the state from using at trial a police interview with a witness that was not

decision to the contrary and remand the case to that court for further proceedings to consider defendant's remaining assignments of error.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

---

available for cross-examination. Although defendant cited the Confrontation Clause in his brief in the Court of Appeals, he did not argue that it barred the disputed evidence; rather, he asserted only that, *because* the disputed testimony was inadmissible hearsay, admitting it violated his constitutional rights. We agree with the Court of Appeals that "defendant does not make any constitutional arguments in relation to this assignment of error." *Cunningham I*, 179 Or App at 381 n 11. Accordingly, we conclude that defendant failed to preserve any constitutional challenges to the admissibility of the evidence at issue here.