Argued and submitted October 7, 2010, reversed and remanded June 1, 2011

In the Matter of C. M. C.,
a Youth.

STATE ex rel JUVENILE DEPARTMENT
OF WASHINGTON COUNTY,
*Respondent,*

*v.*

C. M. C.,
*Appellant.*

Washington County Circuit Court
J070466;
Petition Number 04J070466;
A137947

259 P3d 938

Susan D. Isaacs argued the cause and filed the brief for appellant.

Justice Joy Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

This is a juvenile delinquency case in which youth appeals a judgment finding him within the jurisdiction of the juvenile court for an act that, if committed by an adult, would constitute harassment. ORS 166.065. Youth argues that the juvenile court erroneously admitted hearsay evidence under the domestic violence hearsay exception. OEC 803(26). For the reasons explained below, we agree and, therefore, reverse and remand.

We begin with a brief statement of the relevant facts. Youth lived in an apartment with his mother, Carte. Youth and Carte had an argument and, allegedly, a physical altercation. Carte called 9-1-1 and told a dispatcher that, about an hour earlier, youth had damaged the apartment and pushed her down. Two officers responded. Carte told one of the officers that she had spanked youth, who was 16 years old, and, in response, youth grabbed her and threw her across the room.

The state charged youth with, *inter alia*, harassment. At youth's trial, the state sought to introduce Carte's statements to the 9-1-1 dispatcher and the officer pursuant to the domestic violence hearsay exception, OEC 803(26). The exception applies to certain statements by "a victim of domestic violence" that purport to describe an "incident of domestic violence." OEC 803(26). For the purposes of the exception, "domestic violence" is defined as "abuse between family or household members." OEC 803(26); ORS 135.230(3). In turn, the phrase "[f]amily or household members" is defined to include "[p]ersons cohabiting with each other." ORS 135.230(3), (4).

The state argued that "[p]ersons cohabiting with each other" refers to persons living in the same residence. Youth, on the other hand, argued that "[p]ersons cohabiting with each other" refers to persons living in the same residence in a relationship akin to that of husband and wife. The juvenile court agreed with the state and admitted Carte's statements to the 9-1-1 dispatcher and the officer. Based on the statements, the court found youth within its jurisdiction for harassment. Youth appeals.

On appeal, the parties renew the arguments they made in the juvenile court. The state also argues, as an alternative basis for affirmance, that Carte's statements were admissible as excited utterances under OEC 803(2).

We first turn to the issue of the admissibility of Carte's statements under the domestic violence hearsay exception, OEC 803(26). As relevant here, OEC 803 provides:

"The following are not excluded by [OEC 802, the hearsay rule], even though the declarant is available as a witness:

"* * * * *

"(26)(a)   A statement that purports to narrate, describe, report or explain an incident of domestic violence, as defined in ORS 135.230, made by a victim of the domestic violence within 24 hours after the incident occurred, if the statement:

"(A)   Was recorded, either electronically or in writing, or was made to a peace officer as defined in ORS 161.015, corrections officer, youth correction officer, parole and probation officer, emergency medical technician or firefighter; and

"(B)   Has sufficient indicia of reliability."

ORS 135.230(3) defines "[d]omestic violence" as "abuse between family or household members." In turn, ORS 135.230(4) defines "[f]amily or household members" as:

"(a)   Spouses.

"(b)   Former spouses.

"(c)   Adult persons related by blood or marriage.

"(d)   *Persons cohabitating with each other.*

"(e)   Persons who have cohabited with each other or who have been involved in a sexually intimate relationship.

"(f)   Unmarried parents of a minor child."

(Emphasis added.)

Here, our task is to interpret the phrase "[p]ersons cohabiting with each other." When interpreting a statute, our

goal is to ascertain the intent of the legislature, the best indication of which is the text of the statute itself. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.)). "We give words of common usage their plain, natural, and ordinary meanings, and we give words that have well-defined legal meanings those meanings." *Bergerson v. Salem-Keizer School District*, 341 Or 401, 413, 144 P3d 918 (2006) (internal quotation marks and brackets omitted).

"Cohabit" has a "usual and accepted legal meaning." *Vasconcellos and Vasconcellos*, 65 Or App 433, 435, 671 P2d 739 (1983). As we held in *Edwards and Edwards*, 73 Or App 272, 277-79, 698 P2d 542 (1985), "cohabit" does not refer to simply living in the same residence. "[I]t refers to a domestic arrangement between a man and woman who are not married to each other, but who live as husband and wife, in that, for more than a brief period of time, they share a common domicile and living expenses and are sexually intimate." *Id.* at 278; *see also Black's Law Dictionary* 296 (9th ed 2009) (defining "cohabitation" as "[t]he fact or state of living together, esp. as partners in life, usu. with the suggestion of sexual relations"). Thus, "[p]ersons cohabiting with each other" refers to persons living in the same residence in a relationship akin to that of spouses.

If, as the state argues, the legislature intended the domestic violence hearsay exception to apply to all persons living in a residence, the legislature could have used a different definition of "[f]amily or household members." Instead of including "[p]ersons *cohabiting* with each other," it could have included "persons *residing in the same residence*," as it has in other statutes. *See, e.g.*, ORS 163.730(4) (defining "[h]ousehold member" for the purposes of the stalking statutes as "any person residing in the same residence as the victim"); ORS 244.020(10) (defining "[m]ember of the household" for the purpose of government ethics statutes to mean "any person who resides with the public official or candidate"). But it did not. Instead, the legislature made a policy choice—reflected through its selection of the term "cohabitating," which has a "usual and accepted legal meaning"—to

limit the application of the exception. Thus, the exception does not apply to, for example, simple roommates or dormmates. Nor, as dispositive here, does it apply to minor children and parents who live in the same residence.

In this case, youth and Carte did not live together in a relationship akin to that of spouses. Thus, they were not "[p]ersons cohabiting with each other" for the purposes of the domestic violence hearsay exception. The juvenile court erred by concluding otherwise and admitting Carte's hearsay statements.

As an alternative basis for affirmance, the state argues that Carte's hearsay statements were admissible under OEC 803(2) as excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." OEC 803(2). "[T]he traditional rationale for allowing excited utterances to be admitted over a hearsay objection is that the 'excitement caused by the startling event or condition temporarily stills the capacity for reflection' and thus is likely to produce 'statements free of conscious fabrication.'" *State v. Cunningham,* 337 Or 528, 543, 99 P3d 271 (2004), *cert den,* 544 US 931 (2005) (quoting *State v. Carlson,* 311 Or 201, 215, 808 P2d 1002 (1991)). Whether a statement qualifies for admission as an excited utterance involves factual issues, including whether the statement was made while the declarant was actually under the stress of the startling event or condition; that is, whether the declarant's capacity for reflection was stilled, rendering it unlikely that he or she could consciously fabricate the statement.

In this case, because the state did not argue that Carte's statements were excited utterances in the juvenile court, youth had no reason to develop an evidentiary record regarding the factual issues relevant to whether Carte's hearsay statements, which were made more than one hour after the alleged physical altercation, were admissible as excited utterances, and, therefore, we cannot consider the state's alternative basis for affirmance. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20

P3d 180 (2001) (appellate court will not consider an alternative ground for affirmance if the losing party at trial could have developed a materially different factual record had the alternative theory been raised).

Reversed and remanded.