Argued and submitted April 29, affirmed October 15, 2014, petition for review denied January 15, 2015 (356 Or 685)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**TYRONE UNDERWOOD,**
*Defendant-Appellant.*

Marion County Circuit Court
12C40311; A152163

337 P3d 969

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

Garrett, J., concurring.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for fourth-degree felony assault constituting domestic violence, ORS 163.160(3); ORS 132.586(2); coercion, ORS 163.275; strangulation, ORS 163.187; and menacing constituting domestic violence, ORS 163.190; ORS 132.586(2). We reject the second of defendant's two assignments of error without discussion and write to address only his first assignment of error, in which he argues that the trial court erred in admitting, under the excited utterance exception to the hearsay rule, statements that the victim made to her aunt recounting the domestic violence episode that was the subject of defendant's convictions. The factual circumstances in this case, when viewed as a whole, demonstrate that the victim was under the stress of excitement from the startling event of defendant's abuse and threats when she made the statements to her aunt. We conclude, therefore, that the trial court did not err in ruling that the statement was admissible under the excited utterance exception and, accordingly, affirm.

We review the facts consistently with the trial court's ruling that the victim's statements constituted an excited utterance, "accepting reasonable inferences and reasonable credibility choices that the trial court could have made." *State v. Cunningham*, 337 Or 528, 539-40, 99 P3d 271 (2004).

Defendant and the victim were in a relationship, living together, and the victim was pregnant. Their relationship was characterized by defendant's control over the victim; he often would follow the victim into the bathroom, kept possession of her phone and purse, and did not like when she spent time with friends or family.

The victim had an ultrasound appointment on January 9, 2012. The next day, after the victim received a phone call from her aunt, defendant became angry and pushed the victim up against the wall and squeezed her head tightly. The victim attempted to leave the house, but defendant grabbed her hair and prevented her from leaving, wrestling with her and pushing her to the ground.

Defendant later allowed the victim to call her aunt to come and pick her up. But after that phone call, defendant again became angry, grabbed a large butcher knife, and held it to the victim's throat and to her stomach, telling her, "I will kill you if you go." When the aunt arrived with the victim's brother and knocked on the door, defendant put his hand over the victim's mouth and nostrils so that she could not breathe. Defendant eventually released the victim and allowed the aunt and brother to enter. At some point during their visit, defendant grabbed the victim's brother by the face. Fearing for the safety of her aunt and brother, and believing that, if she said something to them defendant might kill her, the victim decided not to leave with her aunt, telling her, "It'll only make things worse."

Later that night, the victim was still having difficulty breathing, so defendant accompanied her to the hospital. While at the hospital, defendant did not leave her side. The victim later testified that her pain was an 8 on a scale of 10 at the time of the assault, that the next day the pain continued and she felt like she had run a "marathon," and that her body hurt for about a week.

The next day, defendant also went with the victim to a school appointment with her aunt and brother. At one point, the aunt and the victim were alone, and the aunt questioned the victim about her bruises. The victim made up excuses, later testifying that she feared something would happen to her aunt and brother, or that defendant would hurt her again when they got home. After defendant and the victim arrived home, defendant allowed the victim to use her phone to talk to her cousin. The victim used that opportunity to surreptitiously text her aunt to come and get her, asking her "to pretend that she had something in her car that she wanted to drop-off for the victim." When her aunt arrived, the victim escaped with her aunt, leaving with only the clothes she was wearing and her phone. As the victim and her aunt drove away, the victim "broke down and began crying hysterically" and recounted to her aunt "what defendant had done." The aunt insisted that they call the police. Defendant was charged and convicted of fourth-degree assault constituting domestic violence, coercion, strangulation, and menacing constituting domestic violence.

The state sought to admit testimony from the victim's aunt recounting the victim's statements about the domestic violence and threats to her life. Defendant objected and argued that the statements were inadmissible hearsay. The state responded that the statements were admissible under the "excited utterance" hearsay exception. OEC 803(2). The trial court recognized that there are cases in which statements made more than five days after the triggering event were found to fit within the exception, as well as cases where statements uttered less than an hour after the triggering event were found not to fit within the exception. Ultimately, given the facts before it, the court overruled the objection and denied defendant's subsequent motion for mistrial. The court explained:

> "[T]he nature of the event itself was one where [the victim] had had a recent ultrasound of her unborn baby, and was relating what happened with the placing of the knife around her pregnant belly. She was extremely emotional at the time. Her testimony was [that] she was basically affecting an escape at the time. And so, despite the intervening period of time, I do find that there is convincing evidence that she was still under the stress of the event to which the statement related."

We review a trial court's legal conclusion that a statement was admissible under the excited utterance exception to hearsay for legal error. *Cunningham*, 337 Or at 544. However, we review the trial court's factual finding that the statement was made while under the stress of excitement caused by a startling event to determine whether evidence in the record supports that finding. *Id.*

Defendant argues that the victim's statements to her aunt do not qualify as an excited utterance because "nearly a day [had] elapsed between the startling event and the statement," giving the victim time for reflective thought. Defendant also contends that the victim's ability to develop a plan "to leave defendant by deceiving him," coordinate that plan with her aunt and brother, and execute that plan demonstrates that the victim was not under the stress of excitement caused by the startling event. Defendant points to the victim's attendance at a school appointment and her private conversation with her aunt as evidence and implies

that the startling event was limited to the physical violence that he inflicted on the victim.

In response, the state contends that the passage of time is one of several factors relevant to the excited utterance analysis and that all of the factors must be evaluated in the totality of the circumstances. Those factors, in the state's view, support the trial court's determination that the statements were "made under the stress of excitement caused by the startling event."

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless the statement is excluded from the definition of hearsay or falls within an exception. OEC 801; OEC 802. OEC 803(2) provides an exception for an excited utterance, which is "[a] statement relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition." For a hearsay statement to qualify as an excited utterance, three requirements must be satisfied: "(1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition." *State v. Carlson*, 311 Or 201, 215, 808 P2d 1002 (1991). Defendant does not dispute the first or third requirement but disagrees that the victim was under the stress of excitement caused by the startling event or condition.

The rationale underlying the second requirement of the excited utterance exception is that statements made under the stress of excitement are spontaneous and, therefore, trustworthy because the declarant does not have an opportunity to reflect and fabricate. *Cunningham*, 337 Or at 543. In *Carlson*, the Supreme Court described the criteria for determining that a statement is spontaneous:

"The spontaneity-of-the-utterance requirement, *i.e.*, the requirement that the statement of the declarant be 'made while the declarant was under the stress caused by the event or condition,' has both a *causal* and a *temporal* dimension. The declarant's excitement must have been caused by the startling event, and the declarant's statement must have

been made while the excitement persisted. \*\*\* Criteria that bear on the trial court's determination of the spontaneity of the utterance are 'lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate.'"

311 Or at 218 (emphasis in original, quoting Cleary, Strong, Brown & Mostellar, *Evidence, Cases and Materials* 17 (4th ed 1988)); *see* Laird C. Kirkpatrick, *Oregon Evidence* § 803.02, 726 (5th ed 2007) (noting that the trial court can also look at the nature of the event). An excited utterance is admissible hearsay because the stress of the startling event allows the declarant to speak spontaneously rather than having the time to reflect on the event and fabricate a story. *See State v. Hutchison,* 222 Or 533, 537, 353 P2d 1047 (1960). Consequently, the lapse of time to permit reflective thought "may not of itself be controlling, [but] it is an important factor, if not the most important factor to be considered." *Zeller v. Dahl,* 262 Or 515, 519, 499 P2d 1316 (1972). *But see United States v. Iron Shell,* 633 F2d 77, 85 (8th Cir 1980) ("The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of [the excited utterance exception].").

While time to reflect is an important factor in the analysis, it must be understood in context of the nature of the event and the declarant's physical and emotional state to evaluate whether those and "other factors may prolong the impact of a stressful event." *State v. Moen,* 309 Or 45, 60-61, 786 P2d 111 (1990) (internal quotation marks omitted). In *Moen,* the Supreme Court found that statements made by the victim to her doctor would have been admissible under the excited utterance exception. *Id.* The victim made the statements at the second of two doctor's appointments in which she was agitated and nervous and, while crying, told the doctor that she was upset about her son-in-law living in her home, that he had been physically abusive to her daughter, and that she thought he "might kill them both." *Id.* at 60. Sometime between the two visits, the son-in-law had threatened the victim, her daughter, and her grandson with a shotgun. *Id.* at 61. The court did not discuss when the threats occurred, other than to say that they happened

sometime in the month between the two doctor's appointments. The court reasoned that "[c]ontinuing emotional shock or unabated fright and other factors may prolong the impact of a stressful event, making it proper to resort to [the excited utterance exception] despite long lapses of time." *Id.* at 60 (internal quotation marks omitted). Thus, the excited utterance exception applied in spite of a time lapse when (1) the startling events were threats of death and (2) the continuing fright of living with the defendant prolonged the period under which the victim was under the stress of that event.

In this case, evidence in the record supports the trial court's finding that the victim's statements to her aunt were made under the stress of excitement caused by the startling event. Defendant's threats against the pregnant victim's life and his violent acts, which interfered with the victim's ability to breathe and caused her considerable pain—together with the victim's recent ultrasound—prolonged the stressful event. Defendant threatened to kill the pregnant victim if she left, at one point holding a knife to her stomach to demonstrate potential harm to the fetus. The victim believed that defendant would follow through on his threats because he had just violently assaulted and choked her. Those facts, combined with defendant's almost constant presence from the time of the initial abuse until the victim's escape, were sufficient for the court to find that the victim's statements were made under "continual emotional shock or unabated fright." The victim spent the 24 hours after the initial assault with defendant, whom she feared leaving without further harm to herself or her family. Moreover, the victim was in significant pain and had difficulty breathing during the 24-hour period and had just had an ultrasound, further demonstrating why the stress of excitement was prolonged.

The victim's visible condition when she made the statements similarly supports the trial court's finding. She was "hysterically crying" and "physically shaking" once she reached a place of safety. This court has frequently used similar physical and emotional reactions to conclude that a trial court did not err in determining that the victim was under the stress of excitement. *See, e.g., State v. Yong,* 206

Or App 522, 534, 138 P3d 37 (2006) (concluding that the victim was under the stress of excitement caused by the defendant's presence and pointing to the victim being "visibly upset, shaking, very worried, [and] pacing"); *Cunningham*, 337 Or at 541 (evaluating the victim's statements in light of her escalating divorce proceedings that had led to her "emotional deterioration").

Defendant's contention that the victim was not under "continuing emotional shock or unabated fright" is unavailing. It is reasonable to infer that the victim's ability to plan an escape is evidence of her continued agitated state rather than a restored capacity for reflective thought, as defendant contends. The victim could only leave her home by lying to the aggressor who, less than 24 hours before, had threatened to kill her if she left. In addition, the victim's excuses to her aunt about her bruises and her decision not to reveal defendant's abuse during a brief moment alone with her aunt support the trial court's finding that the victim was fearful of defendant and under the prolonged stress of excitement; it was not necessarily, as defendant argues, evidence that the victim had the opportunity for "reflective thought."

In sum, the evidence was legally sufficient to support the trial court's determination that the victim's statements made to her aunt were made under stress of the excitement caused by defendant's violence, which was prolonged by the subsequent events ending with her escape: those events created "continuing emotional shock or unabated fright."

Accordingly, we conclude that the trial court did not err in determining that the victim's statements were admissible under the excited utterance exception to the hearsay rule.

Affirmed.

**GARRETT, J.,** concurring.

I join in the conclusion that the victim's statements were admissible under OEC 803(2), the "excited-utterance" exception to the hearsay rule. I write separately because the trial court made a comment below that indicates a need to clarify the analytical framework that we use to determine

whether a statement falls within the excited-utterance exception.

The rationale behind the excited-utterance exception is that an event may be so startling, upsetting, or painful that it "temporarily stills [a declarant's] capacity for reflection and produces utterances free of conscious fabrication." 1981 Conference Committee Commentary to OEC 803(2); *see also State v. Hutchison*, 222 Or 533, 537, 353 P2d 1047 (1960) (describing a similar rationale). Thus, the Supreme Court has explained that "[o]ne of the basic determinations which must be made by the trial judge upon the offer of testimony as an excited utterance or spontaneous statement is whether the statement of the declarant was a spontaneous reaction to the occurrence or event, rather than the result of reflective thought." *Zeller v. Dahl*, 262 Or 515, 518-19, 499 P2d 1316 (1972) (internal quotation marks omittted). Consequently, Oregon courts have historically followed an excited utterance test that explicitly required a finding that a statement was spontaneous. *See, e.g., State v. Kendrick*, 239 Or 512, 515-16, 398 P2d 471 (1965) (holding that "spontaneous exclamations" fall within an exception to the hearsay rule when these criteria exist: "(1) there must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must be before there has been time to contrive and misrepresent and while reflective powers are yet in abeyance; (3) the utterance must relate to the circumstances of the startling occurrence preceding it").

After the adoption of OEC 803(2) in 1981, however, Oregon courts began to recast the test for an excited utterance.[1] In *State v. Carlson*, 311 Or 201, 215, 808 P2d 1002 (1991), the Supreme Court set forth three findings that a trial court must make before concluding that the exception applies: "(1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to

---

[1] OEC 803(2) provides that hearsay is admissible if it consists of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

the startling event or condition." That articulation tracks the words of OEC 803(2), which refers to a declarant being "under the stress of excitement" rather than a declarant's speaking "spontaneously." Nothing in the legislative history, however, suggests that the legislature intended to abandon the spontaneity requirement. Rather, the commentary reiterates that the "key factor in determining whether an utterance is 'excited,' and therefore qualifies under the exception, is the degree to which it is spontaneous." 1981 Conference Committee Commentary to OEC 803(2).

Likewise, nothing in cases such as *Carlson* suggests that the spontaneity requirement has been abrogated. To the contrary, *Carlson* implies that the "under the stress" requirement is simply another way of describing the requirement that the statement be spontaneous. That is evidenced by this passage from *Carlson*: "The spontaneity-of-the-utterance requirement, *i.e.*, the requirement that the statement of the declarant be 'made while the declarant was under the stress caused by the event or condition,' has both a causal and a temporal dimension." 311 Or at 218 (emphasis omitted).

The Supreme Court's opinion in *State v. Cunningham*, 337 Or 528, 99 P3d 271 (2004), also suggests that the spontaneity-of-the-utterance and the under-the-stress requirements are simply different ways of expressing the same concept. In addressing the second prong of the three-prong *Carlson* test, the court said:

"Next, we must consider whether the victim was under the stress of the excitement of that startling event at the time that she made the disputed statements and whether that event caused the victim's stress or excitement. *Carlson*, 311 Or at 218. As this court explained in *Carlson*, the traditional rationale for allowing excited utterances to be admitted over a hearsay objection is that the 'excitement caused by the startling event or condition temporarily stills the capacity for reflection' and thus is likely to produce 'statements free of conscious fabrication.' *Id*. at 215 (citing Legislative Commentary to Oregon Evidence Code 154 (1981)). In other words, the spontaneity of a statement made under the stress of a startling event is used as an indicator that the statement is reliable. *See State v. Hutchison*, 222

Or 533, 537, 353 P2d 1047 (1960) (stating same in regard to *res gestae,* doctrinal predecessor to excited utterance exception). Criteria that bear on the trial court's determination of the spontaneity of the utterance include 'lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate.' *Carlson,* 311 Or at 218 [quoting Cleary, Strong, Brown & Mostellar, Evidence, Cases and Materials 17 (4th ed 1988)]."

*Cunningham,* 337 Or at 542-43; *see also State ex rel Juv. Dept. v. C. M. C.,* 243 Or App 335, 340, 259 P3d 938 (2011) ("Whether a statement qualifies for admission as an excited utterance involves factual issues, including whether the statement was made while the declarant was actually under the stress of the startling event or condition; that is, whether the declarant's capacity for reflection was stilled, rendering it unlikely that he or she could consciously fabricate the statement."); *State v. Stonaker,* 149 Or App 728, 740, 945 P2d 573 (1997), *rev den,* 327 Or 123 (1998) (describing the second *Carlson* factor as the "spontaneity-of-the-utterance" factor).

Thus, *Carlson* and *Cunningham* treat the spontaneity-of-the-utterance and the under-the-stress requirements as closely related concepts. Neither case, however, explicitly discusses the nature of that relationship, which could be a source of confusion in cases where a declarant may have been "under stress," as we commonly understand that phrase, yet also have had time for reflective thought such that his or her statement cannot be regarded as "spontaneous."

That potential for confusion is revealed by a comment made by the trial court in this case. In deciding that the aunt's testimony about the victim's statements was admissible, the trial court stated that it was relying on the three "elements for an excited utterance" discussed in *Carlson.* The trial court continued:

"I noticed there was a case in the commentary to the rule, back from 1972, *Zeller,* and that focused on the period—the opportunity for the witness to reflect, and so I think that's why that was in my memory. But as I stated earlier, that's not actually an element, but one of the criteria to determine in deciding the second prong."

The trial court's comments can be interpreted as casting doubt on the continued relevance of *Zeller* and minimizing the importance of the distinction between statements that are spontaneous and those that are the result of reflective thought. Although *Zeller* predates both the adoption of OEC 803(2) and *Carlson,* it remains good law. The legislative commentary regarding OEC 803(2) approvingly cited *Zeller* for the proposition that "the time interval [between the startling event and the utterance] is one of the most important factors *in determining spontaneity,* particularly if there is evidence that the declarant engaged in reflective thought during the interval." 1981 Conference Committee Commentary to OEC 803(2) (emphasis added). In that passage, "spontaneity" is the thing to be determined; it is not a "criterion" that is used to determine something else.

In my view, there is only one way to reconcile the three-part test in *Carlson* with the continued centrality of the spontaneity requirement. The "under stress" prong of the *Carlson* test cannot be satisfied by a showing that a declarant was under just any type of stress. Rather, it must be shown that the declarant was under a specific type of stress—one that "temporarily stills the capacity for reflection and produces utterances free of conscious fabrication." 1981 Conference Committee Commentary to OEC 803(2).

In this case, regardless of any analytical imprecision below, the record supports the finding that the victim's statements were made while she was under the stress of excitement caused by the preceding events, including her rush to escape from defendant. The evidence shows that the victim left the apartment without even taking her purse, began walking to the car, saw defendant watching her, increased her pace, entered the car quickly, and urged her aunt to "Go. Go Now." The victim was shaking and crying when she began speaking about her ordeal. That is a sufficient basis on which to find that the victim's capacity for reflection had been temporarily stilled.