No. 19 January 22, 2026 507

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDALL RICHARD KILBY,
aka Randall Richard Kilby John,
aka Randall Richard Kelby, aka Randall Kilby,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR13728; A183424

Annette C. Hillman, Judge.

Submitted November 25, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from his convictions for two counts of first-degree murder. On appeal, he contends that the trial court erred in denying his motion to suppress and in overruling his objections to a witness's statements and a recorded interview with police. We affirm.

*Motion to suppress:* Defendant contends that the trial court erred in denying his motion to suppress incriminating statements that he made to officers during an interrogation. Before interviewing him, the officers gave defendant *Miranda* warnings, and he agreed to speak with them. Defendant then confessed to killing the two victims. The officers also asked him about an unrelated incident involving a different victim, DB, and defendant confessed to killing DB with a hammer. The state indicted defendant for murder in two different cases, one involving DB and the other—this case—involving the two other victims.

Defendant moved to suppress his confessions in both cases, arguing that the officers violated his right to counsel under Article I, section 11, of the Oregon Constitution by not allowing him the opportunity to contact the attorney who was representing him with respect to the case involving DB. The trial court in this case denied defendant's motion, while the trial court in the case involving DB granted defendant's motion.

In the case involving DB, the state appealed the order granting DB's motion to suppress. The Oregon Supreme Court concluded that the officers did not violate defendant's right to counsel because he had not yet been charged with DB's murder and thus his Article I, section 11, rights had not attached. *State v. Kilby*, 373 Or 557, 559, 568 P3d 957 (2025). As defendant concedes, that same reasoning forecloses defendant's claim on appeal with respect to his incriminating statements about the two victims in this case.

*Excited utterance:* Defendant argues that the trial court erred in allowing the state to introduce a recording of a conversation between his mother, Allen, and a police officer. The trial court concluded that Allen's statements were excited utterances and admitted them under that hearsay

exception. A hearsay statement is admissible under that exception if, among other requirements, the statement was made while the declarant was under the stress of excitement caused by a startling event. *See* OEC 803(2) (allowing "statement[s] relat[ed] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"); *State v. Carlson*, 311 Or 201, 215, 808 P2d 1002 (1991). We review a trial court's legal conclusion that a statement was admissible under the excited utterance hearsay exception for legal error, *State v. Cunningham*, 337 Or 528, 544, 99 P3d 271 (2004), *cert den*, 544 US 931 (2005), but whether the proponent of the statement has established the requirements of the excited utterance exception is a preliminary question of fact for the trial court under OEC 104(1), *Carlson*, 311 Or at 216. "[W]e review the trial court's factual finding that [a] statement was made while under the stress of excitement caused by a startling event to determine whether evidence in the record supports that finding." *State v. Underwood*, 266 Or App 274, 277, 337 P3d 969 (2014).

Here, Allen spoke with the officers after they found her hiding under a tree in a fetal position. An officer described her as terrified, visibly shaking, scared, and very hesitant to talk with officers. Allen told officers that two people were "murdered inside of her house" and that she had seen defendant commit one of the murders with an axe. The officers spoke with Allen for about five minutes and then went to check on the victims, both of whom were dead.

Allen spoke with the officers again about 20 minutes after they first found her hiding. An officer described her as having calmed down "a little bit," but noted that she was still "very, very excited and overwhelmed and stressed," shaking, and visibly frightened. The officer, who was recording the conversation, asked Allen to explain what had happened. When she was speaking, Allen was "all over the place" and "very stressed out," and there were a few times where Allen "started crying and had to take a break or was becoming very overwhelmed." Allen explained to the officer that defendant had killed the two victims the day before. After the murders, defendant and Allen drove around Bend, during which defendant held the axe he had used in

the murders and repeatedly told Allen that he "should" or "needed to" kill her because she had witnessed the murders. They returned home and Allen was eventually able to get away from defendant. At that point, neighbors called 9-1-1 and the officers found Allen hiding behind the tree.

At trial, the state offered the recording of Allen's conversation with the officers. Defendant objected, arguing that it was hearsay and did not meet the requirements for the excited utterance exception because Allen had had enough time following her escape from defendant to calm down before explaining what happened. The trial court overruled the objection and admitted the evidence, finding that Allen was under the stress of the excitement caused by the ordeal when she spoke to the officers:

> "Based on the fact that the witness in this case, the declarant, had been hiding in a fetal position, had been visibly shaken and scared and terrified in general, had returned back to the home where she indicated two individuals had been murdered, that she had witnessed one of those individuals who had been murdered, even though she was on scene, she was still, to the officers' statements, that she was still under the stress of the event. She wouldn't sit down. She cried. She paused. She was visibly shaken. * * * The Court will make a finding that the subsequent statements made to the officer on that second interview with her still qualify as excited utterance."

The trial court correctly concluded that Allen's statements qualified as excited utterances. As the trial court found (and the record supports), Allen made the statements after seeing her son murder at least one victim, and while she was still at the location of the murders and "under the stress" of the event, as evidenced by the fact that she was shaking, crying, and could not sit down. Additionally, although about 24 hours had lapsed between the murders themselves and Allen's statements, Allen made the statements just 20 minutes after getting away from her son, who had been driving Allen around the night before while carrying an axe and threatening to kill her because she had witnessed the murders. *See, e.g.*, *State v. Blaylock*, 267 Or App 455, 469-70, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (murder victim's statements to her friend within hours of a startling event were excited utterances

where victim was still suffering physical effects from the event and was "very, very scared"). As the court found, Allen was still under the stress of the events of the prior 24 hours, a finding that is supported by evidence in the record.

*Past recollection recorded:* In his third assignment of error, defendant contends that the trial court erred in overruling his hearsay objection to a recording of an interview between two police officers and Allen. That interview took place in Allen's hotel room two days after the murders. The trial court allowed the recording under OEC 803(5), the past recollection recorded exception. Under that exception, a recording can be admitted when the record shows that: "(1) the witness now has insufficient recollection to testify fully and accurately; (2) the memorandum or record was made or adopted by the witness; (3) the making or adoption occurred at a time when the matter was fresh in the memory of the witness; and (4) the memorandum or record correctly reflects that knowledge." *State v. Miller*, 287 Or App 135, 153, 401 P3d 229 (2017) (internal quotation marks omitted). The trial court here found each of those conditions satisfied, and defendant challenges that ruling on appeal with respect to the second element of OEC 803(5), that Allen "made or adopted" the recording. Whether the evidence met the requirements of the exception is a preliminary question of fact for the trial court to determine under OEC 104(1), and we will uphold that determination if any evidence in the record supports it. *Cunningham*, 337 Or at 535. We "review for legal error the trial court's ultimate legal conclusion on whether the hearsay statement is admissible under an exception to the hearsay rule." *Miller*, 287 Or App at 138.

The evidence shows that the officers told Allen that she was being recorded, and she affirmatively consented to being recorded. As the court found, Allen was thus "acting with the intention to bring about the existence of" the recording, a finding that was sufficient to meet the requirement that the declarant made the recording. *See id.* at 155 (a declarant must both know that their statement is being recorded and "act with the intention to bring about the existence of [a] record" to have "made" a record). The trial court correctly admitted the evidence under OEC 803(5).

Affirmed.