Submitted on September 7, 2021, reversed and remanded February 2, 2022

DALE WILSON,
*Petitioner-Appellant,*

*v.*

Garrett LANEY,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
18CV53840; A173551

504 P3d 666

Petitioner was convicted of burglary, robbery, and assault, based on an incident in which he was found to have gone to his mother's house, punched his nephew, been told to leave, broken into his nephew's locked room, and stolen items from the room. After an unsuccessful direct appeal, petitioner sought post-conviction relief, alleging that his trial counsel had provided constitutionally inadequate assistance. Among other things, petitioner contends that his trial counsel should have made a hearsay objection when, at trial, the police officer who responded to the 9-1-1 call testified to statements that petitioner's mother and nephew made to the officer over a 45-minute period. The post-conviction court denied relief on all claims. *Held*: The post-conviction court erred in denying relief. Petitioner's trial counsel provided inadequate assistance in failing to object to the hearsay evidence. The superintendent contended that it was reasonable not to object, because the statements were admissible as excited utterances under OEC 803(2), or as statements concerning domestic violence under OEC 803(26a), but no reasonable counsel would have so concluded under the circumstances. Under the circumstances, all reasonable counsel would have made a hearsay objection. The lack of objection and resulting admission of the hearsay evidence was prejudicial and could have tended to affect the outcome of petitioner's criminal trial.

Reversed and remanded.

Patricia A. Sullivan, Senior Judge.

Jedediah Peterson and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

In his criminal trial, petitioner was convicted of first-degree burglary, third-degree robbery, and fourth-degree assault, based on an incident in which he was found to have gone to his mother's house, punched his nephew, been told to leave, broken into his nephew's locked room, and stole items from the room. After an unsuccessful appeal of his convictions, petitioner sought post-conviction relief. He contends that the post-conviction court erred in denying relief, because his trial counsel was constitutionally inadequate and ineffective. We conclude that the post-conviction court erred and, accordingly, reverse and remand.

## I.   BACKGROUND

We begin by summarizing the underlying events that gave rise to the charges against petitioner, specifically as related to the post-conviction claim that we address. Initially, we describe the evidence admitted at petitioner's criminal trial that supports the jury's verdicts. We discuss other evidence later as pertinent.

C is petitioner's mother. Petitioner had recently moved out of C's house. H, who is C's grandson and petitioner's nephew, had moved into petitioner's old room. Petitioner still had some clothes and other items in a closet in his old room and a box in the hallway.

In a phone call with C, petitioner learned that H had gone through his things and taken a bottle of alcohol and that, upon finding H with the bottle, C had poured it down the sink due to H being a minor (aged 17). Upset, petitioner asked C to pay for the alcohol, which she refused. C then put H on the phone, and H too refused to pay for the alcohol. Petitioner told C that he was coming over to talk and to keep H away from him. Shortly after petitioner arrived, he started a physical fight with H in the living room, during which he punched H in the face, hit him with a lanyard, and shoved him into a chair. During the fight, H also punched petitioner, and a lamp got broken. C yelled at them both to get out of her house and to stop breaking her things. H left the house. Petitioner went to his old room and used a butter knife to open the locked door, denting the doorframe molding

and damaging the "latch." According to C, petitioner started going through H's stuff, "pulling out drawers and throwing them and throwing his stuff all over the room," while C told him to leave. Petitioner took several items from H's room—a gold necklace, a watch, and $42 from H's wallet—and finally left. As petitioner left the house, H either was coming back inside or was on the front porch.

H called 9-1-1, and a police officer responded within five to 10 minutes. For approximately 45 minutes, the officer took statements from H and C and observed and photographed the scene. H had some redness and minor abrasions on his upper body. The officer then went to petitioner's house, talked to petitioner, and arrested him. H's gold necklace, watch, and $42 were never located.

Petitioner was indicted on multiple charges and tried to a jury. C, H, and the responding officer all testified at trial. C described the incident. H claimed not to remember what happened and essentially gave no substantive testimony. The officer then testified to statements that C and H had made to him on the night of the incident, his observations at C's house, and his contact with petitioner. As to C, her out-of-court statements as described by the officer were similar to her trial testimony but varied in certain respects. As to H, his out-of-court statements were the only evidence of his version of events, given his claimed lack of memory at trial.

After hearing all the evidence, the jury found petitioner guilty of first-degree burglary, ORS 164.225, third-degree robbery, ORS 164.395, and fourth-degree assault, ORS 163.160. We affirmed those convictions on appeal. Petitioner then sought post-conviction relief, which the post-conviction court denied. Petitioner appeals.

## II.   POST-CONVICTION STANDARD

"Post-conviction relief is warranted when there has been a 'substantial denial' of a petitioner's 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting ORS 138.530(1)(a)). On review, we

are bound by the post-conviction court's factual findings if supported by the record, and we review the post-conviction court's legal conclusions for errors of law. *Horn v. Hill*, 180 Or App 139, 141, 41 P3d 1127 (2002).

Under Article I, section 11, of the Oregon Constitution, a criminal defendant has the right to adequate assistance of counsel. *Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981). To succeed on a post-conviction claim based on that right, a "petitioner must establish, by a preponderance of the evidence, that defense counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result of counsel's inadequacy." *Delgado-Juarez v. Cain*, 307 Or App 83, 90-91, 475 P3d 883 (2020) (internal quotation marks omitted). With respect to inadequacy, we look to whether all reasonable lawyers would have acted as petitioner claims his lawyer should have. *Maney v. Angelozzi*, 285 Or App 596, 608, 397 P3d 567 (2017). We will not second-guess a lawyer's tactical decisions unless they reflect an absence or suspension of skill or judgment. *Montez v. Czerniak*, 355 Or 1, 7, 322 P3d 487, *adh'd to on recons*, 355 Or 598, 330 P3d 595 (2014). If inadequate assistance was provided, then we next determine whether the petitioner proved that it tended to affect the result of the trial. *Id.* There must be more than a mere possibility that it affected the outcome, but it need not be a probability. *Green*, 357 Or at 322.[1]

## III.   ANALYSIS

Petitioner contends that his trial counsel was constitutionally inadequate in four ways: (1) failing to move for judgment of acquittal on the burglary charge; (2) failing to object to the jury instruction on burglary; (3) failing to object to vouching in the prosecutor's opening statement; and (4) failing to object to admission of C's and H's out-of-court

---

[1] Petitioner also claims ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. The state and federal standards are "functionally equivalent." *Montez*, 355 Or at 6-7; *see also Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (stating federal standard). Petitioner does not make any arguments unique to the federal constitution, and we limit our written discussion to petitioner's claim under Article I, section 11, of the Oregon Constitution.

statements to the police officer. We begin with the fourth assignment of error, which proves dispositive.

Petitioner argues that his trial counsel was constitutionally inadequate for failing to object to the admission into evidence of C's and H's hearsay statements to the police officer who responded to the 9-1-1 call. In his post-conviction affidavit, trial counsel did not provide any reason for not making a hearsay objection. The post-conviction court denied petitioner's claim, however, concluding that petitioner had not shown that trial counsel would have been successful in excluding the statements. Like the superintendent, we understand that ruling to go to both the adequacy of performance and a lack of prejudice. The post-conviction court did not specify on what legal basis it believed the statements would have been admissible over a hearsay objection.

In his opening brief on appeal, petitioner addresses the only potential basis for admissibility that the superintendent raised below. The superintendent summarily asserted in his post-conviction trial memorandum that the statements were admissible under OEC 613(2) as prior inconsistent statements. As he did below, petitioner contests that assertion. He argues that H's statements were not admissible under OEC 613(2), given H's lack of memory at trial. *See State v. Staley*, 165 Or App 395, 401, 995 P2d 1217 (2000) (prior out-of-court statements could not be used to impeach a witness who testified only to a lack of memory, because "logically the only impeachment of that testimony would be to show that she in fact did remember something relevant"). And he suggests that, even if C's statements were admissible under OEC 613(2), they were not admissible for their truth, only as impeachment. *See State v. Derryberry*, 270 Or 482, 486-87, 528 P2d 1034 (1974) ("testimony of prior inconsistent statements by a witness is admissible solely for purposes of impeachment, and not as substantive evidence"); *see also State v. Ramirez*, 310 Or App 62, 65, 483 P3d 1232 (2021) ("Confronting a witness with the witness's own prior inconsistent statements is not hearsay, but rather a type of impeachment evidence not offered for the truth of matter asserted but to cast doubt on the credibility of the witness.").

In response, the superintendent abandons the argument he made below under OEC 613(2). He now argues instead that it was not inadequate assistance for petitioner's trial counsel not to object to the hearsay evidence, because H's and C's statements were admissible both as excited utterances under OEC 803(2) and as statements concerning domestic violence under OEC 803(26a).[2]

We first consider whether reasonable defense counsel would not have made a hearsay objection because it would have been apparent that the statements were admissible as excited utterances under OEC 803(2). "Excited utterances are received against a hearsay objection for the purpose of proving the truth of the matter stated *** on the rationale that the excitement caused by the startling event or condition temporarily stills the capacity for reflection and thus produces statements free of conscious fabrication." *State v. Carlson*, 311 Or 201, 215, 808 P2d 1002 (1991). "In other words, the spontaneity of a statement made under the stress of a startling event is used as an indicator that the statement is reliable." *State v. Cunningham*, 337 Or 528, 543, 99 P3d 271 (2004). "The key factor in determining whether an utterance is 'excited,' and therefore qualifies under the exception, is the degree to which it is spontaneous." Legislative Commentary to OEC 803, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.02[2] (4th ed 2002).

Three requirements exist for a statement to qualify as an excited utterance: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition. *Carlson*, 311 Or at 215. Whether an event is "startling" is a "uniquely subjective" inquiry. *Id*. at 217. As for the second requirement, there is "both a *causal* and a *temporal* dimension," in that "[t]he declarant's excitement must have been caused by the startling event, and the declarant's statement must have been

_____

[2] We understand the superintendent to be arguing that it would have been apparent to trial counsel from the *existing* record that the statements were admissible under OEC 803(2) or OEC 803(26a), such that there was no reason to object.

made while the excitement persisted." *Id.* at 218 (emphases in original). In other words, an excited utterance "is really an effusion." *State v. Hutchison*, 222 Or 533, 537, 353 P2d 1047 (1960). "The pain, excitement or horror of the event had stilled the powers of reflection and had enabled the event itself to speak through the tongue of the declarant. *It is the startling event rather than the will of the declarant that propelled his tongue.*" *Id.* (emphasis added).

"Criteria that bear on the trial court's determination of the spontaneity of the utterance are lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate." *Carlson*, 311 Or at 218 (internal quotation marks omitted). "[T]he ultimate legal issue—whether the requirements of OEC 803(2) have been met and the hearsay statement is therefore admissible as an excited utterance—is a question of law as to which there is only one legally correct outcome." *Cunningham*, 337 Or at 538.

Statements made during or within a few minutes of a startling event are particularly susceptible to being excited utterances. "[T]he lapse of time to permit reflective thought may not of itself be controlling, but it is an important factor, if not the most important factor to be considered." *State v. Underwood*, 266 Or App 274, 279, 337 P3d 969 (2014) (internal quotation marks and alterations omitted). For example, in *State v. Hasson*, 153 Or App 527, 532-33, 958 P2d 183 (1998), a statement that a woman "blurted out" in the first minute of a 9-1-1 call, while frightened, was an excited utterance. In *State v. Yong*, 206 Or App 522, 534, 138 P3d 37, *rev den*, 342 Or 117 (2006), a woman's statements to a police officer were excited utterances, where the officer arrived within four minutes of her 9-1-1 call, the woman was still talking to the 9-1-1 dispatcher, and the woman was "visibly upset, shaking, very worried, [and] pacing" and obviously traumatized; the evidence showed that her "unabated fright had persisted over a short interval of time—no more than a few minutes—before she made the statements." By contrast, in *State v. Stonaker*, 149 Or App 728, 742-45, 945 P2d 573 (1997), *rev den*, 327 Or 123 (1998), where a woman was sobbing and incoherent when she called 9-1-1 about her

boyfriend threatening her with a gun, her statements to the 9-1-1 dispatcher over a less-than-five-minute period were admissible as excited utterances, but her statements to the officer who arrived three to five minutes later, when she had somewhat calmed down, were not sufficiently spontaneous to be admitted.

Depending on the particular facts, however, statements made later in time after a startling event may qualify as excited utterances. *See* Legislative Commentary to OEC 803, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 803.02[2] (4th ed 2002) ("How long can excitement prevail? Obviously there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor." (Internal quotation marks omitted.)). In *State v. Wolfs*, 119 Or App 262, 265-66, 850 P2d 1139, *rev den*, 317 Or 163 (1993), a woman's statements to a 9-1-1 dispatcher and the responding officer over a one-hour period were admissible as excited utterances, where she came home, found her husband on the couch with a pistol lying by his head, and yelled at him, at which point the gun went off and she ran to the neighbor's house to call 9-1-1, not knowing if he had survived. In *Underwood*, 266 Or App at 280-81, a pregnant woman's statements to her aunt a day after being assaulted by her boyfriend—while "hysterically crying" and "physically shaking"—were admissible as excited utterances, because, despite the passage of time, the stress from the event was prolonged by the seriousness of the assault, by the boyfriend's threats to kill her and her unborn baby, and by the boyfriend's near-constant presence after the assault until the woman escaped by surreptitiously contacting her aunt and asking her to fabricate a story to get her out of the house.[3]

Here, C's and H's out-of-court statements to the police officer were not admissible as excited utterances on

---

[3] A new startling event may also trigger an excited utterance about a past event. For example, in a Ninth Circuit case cited favorably in *Carlson*, an assault victim was hospitalized for seven weeks and, approximately one week after returning home, was shown a newspaper article with a photograph. The display of the photograph was a sufficiently startling event that the victim's statement in response—"[h]e killed me, he killed me"—was admissible as an excited utterance. *Carlson*, 311 Or at 217 (discussing *United States v. Napier*, 518 F2d 316 (9th Cir), *cert den*, 423 US 895 (1975)).

this record. The startling event was less extreme in this case than in many involving excited utterances. At petitioner's criminal trial, there was no evidence that, when the officer arrived, C and H were frightened for their physical safety, in shock, or otherwise under such "stress of excitement" from the startling event that they lacked the "capacity for reflection," *Carlson*, 311 Or at 215, and spoke without intention, *Hutchison*, 222 Or at 537. Certainly, there was evidence that C and H were "upset" about what had happened. The officer described H as "pretty upset" and "agitated," which was the only evidence of H's mental state. The responding officer described C as "upset" but "more frustrated of the whole incident," while C described herself as "very upset" and "extremely emotional" because of everything that happened. It is hardly surprising for a person to be "upset" or "emotional" about a criminal incident, but there are important gradations to such emotions, as *Stonaker* demonstrates. Evidence of someone being generally "upset" or "emotional" is slim proof of the type of emotional state necessary for a statement to qualify as an excited utterance.

As for the lapse of time—"an important factor, if not the most important factor to be considered," *Underwood*, 266 Or App at 279—there was no evidence presented at petitioner's trial as to how much time elapsed between petitioner punching H (the most startling event) and the 9-1-1 call. However, there was at least some opportunity for H and C to calm down, between the end of the fight and the police arriving. In any event, there was evidence that at least an hour passed between petitioner punching H and the officer finishing speaking with H and C, which is a very long time to speak only in excited utterances.

Finally, at petitioner's criminal trial, the officer made no mention of either C or H "blurting" things out, speaking incoherently, failing to answer questions responsively, having trouble with linear thinking, or otherwise behaving in a manner suggestive of a highly emotional state likely to produce excited utterances. *See Carlson*, 311 Or at 215 (regarding relevant considerations). To the contrary, the officer testified that C and H were "extremely cooperative with the investigation," including walking him through the

house, showing him "all the stuff," and explaining to him what had happened.

On the record from petitioner's trial, no reasonable defense counsel would have concluded that C's and H's statements were admissible as excited utterances, such that a hearsay objection would fail. The possibility of the state invoking OEC 803(2) in response to a hearsay objection therefore would not have dissuaded reasonable counsel from objecting.

We next consider the superintendent's argument that reasonable defense counsel would not have made a hearsay objection because it would have been apparent during petitioner's criminal trial that the statements were admissible under OEC 803(26a) as statements concerning domestic violence. As relevant here, OEC 803(26a) allows for the admission of a hearsay statement that "purports to narrate, describe, report or explain an incident of domestic violence, as defined in ORS 135.230," where the statement is "made by a victim of the domestic violence within 24 hours after the incident occurred," is made to a peace officer, and has sufficient indicia of reliability.

The record from petitioner's criminal trial does not demonstrate that C's and H's statements would have been admissible under OEC 803(26a). As a threshold matter, petitioner punching H would not meet ORS 135.230's definition of "domestic violence." ORS 135.230 defines "domestic violence" as "abuse between family or household members." ORS 135.230(3). "Abuse" includes "intentionally, knowingly, or recklessly causing physical injury." ORS 135.230(1)(a). However, "family or household members" is limited to spouses, former spouses, "*adult* persons related by blood or marriage," cohabitating persons, persons who have cohabitated or been involved in a sexually intimate relationship, and unmarried parents of a minor child. ORS 135.230(4) (emphasis added); *see State v. Sturgeon*, 253 Or App 789, 790, 291 P3d 808 (2012) (explaining that "cohabitating" as used in ORS 135.230(4) "refers to a domestic arrangement between a man and a woman who are not married to each other, but who live as husband and wife" (internal quotation marks omitted)). Although petitioner and H are related by

blood or marriage, the evidence was that H was a minor (aged 17) at the time of the incident, eliminating the only possible means of petitioner and H meeting the definition of "family or household members."

To the extent that the state suggests that the incident nonetheless involved "abuse" between "family or household members" because C and petitioner are adults related by blood (she is his mother) and petitioner recklessly placed *C* in fear of serious physical injury during his assault on H—*see* ORS 135.230(1)(b) (defining "abuse" to include "[i]ntentionally, knowingly or recklessly placing another in fear of imminent serious physical injury")—we reject that argument. There was no evidence that C was in fear of imminent serious physical injury to herself during the incident, nor can that reasonably be inferred on the record.

Under the circumstances, we agree with petitioner that all reasonable trial counsel would have made a hearsay objection to the officer's testimony regarding H's and C's out-of-court statements. On this record, the objection would have been well-founded, and the possibility of the state invoking OEC 803(2) or OEC 803(26a) in response should not have affected the decision to object, as those exceptions did not so obviously apply based on the trial evidence that reasonable counsel would have viewed it as pointless to object. *See Krummacher v. Gierloff*, 290 Or 867, 874, 627 P2d 458 (1981) (adequate assistance of counsel requires that the lawyer do those things "reasonably necessary to diligently and conscientiously advance the defense"); *Molette v. Nooth*, 291 Or App 426, 433, 421 P3d 379, *rev den*, 363 Or 481 (2018) (the petitioner received inadequate assistance where trial counsel failed to make an objection that had a "well-founded basis in the law" and "there were obvious significant benefits to petitioner to pursue such a legal challenge, and no risks or downsides").

Having established inadequate assistance, petitioner next had to prove prejudice, that is, a tendency to affect the outcome of the trial. *Montez*, 355 Or at 7. Petitioner had to establish more than a mere possibility that it affected the outcome, but he did not have to establish a probability. *Green*, 357 Or at 322. Here, except for arguing that a hearsay

objection would not have succeeded, the superintendent has made no argument regarding prejudice. We have already addressed the likely success of a hearsay objection. On this record, a hearsay objection would have been well-founded, and the statements likely would have been excluded. Beyond that issue, there is no real question that the admission of H's and C's hearsay statements was prejudicial to petitioner. Without the hearsay statements, the jury would have heard nothing about H's version of events, and it would have heard a single version of events from C that was more favorable to petitioner than what she told the police officer. The state's evidence would have been significantly weaker as to who started the fight between petitioner and H and how it progressed; whether petitioner damaged the door to H's room when he used a butter knife to open the lock; whether petitioner had already moved out or was still "in the process of moving out"; and what items, if any, petitioner took from H's room.

Accordingly, the post-conviction court erred in denying relief on petitioner's claim that his trial counsel was constitutionally inadequate for failing to object to the admission of C's and H's hearsay statements. That claim pertains to all of petitioner's convictions, and so we need not address petitioner's other claims of inadequate assistance. We reverse and remand for the post-conviction court to grant relief on petitioner's claim.

Reversed and remanded.