No. 223 April 10, 2024 789

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELADIO RODRIQUEZ-HILARIO,
*Defendant-Appellant.*

Marion County Circuit Court
21CR60414; A178666

Jodie A. Bureta, Judge.

Submitted February 7, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of first-degree assault constituting domestic violence, ORS 163.160(3), based on his punching his wife, M, and injuring her mouth. By the time of trial, M denied that defendant had punched her, so the state relied heavily on M's out-of-court statements from the night of the incident, coupled with evidence of her injury, to prove its case. On appeal, defendant raises two assignments of error. First, he argues that the trial court erred when it allowed M's adult son, Jorge, to testify to statements that M made to Jorge within 20 minutes of the incident. Second, he argues that the trial court erred when it allowed a sheriff's deputy to testify to statements that M made to the deputy, as translated in real time by Jorge, three hours after the incident. For the following reasons, we affirm.

*Facts.* Defendant and M are married. On the evening of December 12, 2021, defendant either intentionally or accidentally hit M in the mouth, depending on which version of events is believed. At the time of the incident, one or more children were present in the house, but no one was in the room with defendant and M.

Around 6:15 p.m., Jorge arrived at the house with his brother, Carlos, whom he had picked up from work. Their teenaged sister came outside and had a conversation with Carlos that prompted Jorge to call M. According to Jorge, M was crying on the phone and was "definitely not okay," whereas M had been "fine" when Jorge called her 20 minutes earlier. Jorge then went inside the house, where he found M crying, having trouble speaking, and "bleeding from her mouth" with a swollen lip. Carlos gave M ice for her lip and started cleaning her up. Jorge asked M, "What happened?" M answered that she and defendant had been arguing and that defendant put his arm around her "like he was going to hug her" and then "punched her in the face." M told Jorge that it was an intentional punch. M was "emotionally upset" during this conversation. Based on the change in M's demeanor since their first phone call, Jorge believed that the incident had occurred within the past 20 minutes.

Around 9:20 p.m., Jorge called 9-1-1, and a sheriff's deputy arrived at 9:43 p.m. The deputy spoke English, whereas M speaks Spanish, so Jorge translated when the deputy interviewed M. As translated by Jorge, M told the deputy that defendant had been intoxicated and upset when M returned from church around 4:00 p.m. and that defendant later got upset when M gave him his dinner plate, threw the plate in the garbage, and "placed his arm up around her shoulder as to give her a hug from the side and then took his fist and swung it up and hit her in the mouth." When Jorge translated M's description of defendant hitting her, M—who does not speak English but understands some English—motioned being hugged and then made "a closed fist." As translated by Jorge, M rated her pain as "three to four" on a 10-scale and said that she had been icing her lip. The deputy observed dried blood, bruising, swelling, and redness.

*Standard of review.* Both of defendant's assignments of error challenge evidentiary rulings regarding hearsay exceptions. "In reviewing a trial court's ruling 'that a statement fits within an exception to the hearsay rule,' we will 'uphold the trial court's preliminary factual determinations if any evidence in the record supports them.'" *State v. Blaylock*, 267 Or App 455, 460, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (quoting *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006)). "We review 'the trial court's ultimate legal conclusion, as to whether the hearsay statement is admissible under an exception to the hearsay rule, to determine if the trial court made an error of law.'" *Id.* (quoting *Cook*, 340 Or at 537).

*M's statements to Jorge.* The trial court admitted M's out-of-court statements to Jorge under the excited-utterance exception to the hearsay rule. That exception applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." OEC 803(2). Its rationale is that the excitement of the startling event "temporarily stills the capacity for reflection and thus produces statements free of conscious fabrication." *State v. Carlson*, 311 Or 201, 215, 808 P2d 1002 (1991). One requirement for

an excited utterance is that the statement must have been made while the declarant was under the stress of excitement caused by the event or condition. *Id.* at 218. "Criteria that bear on the trial court's determination of the spontaneity of the utterance are lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate." *Id.* (internal quotation marks omitted).

Defendant argues that, although M was crying and upset, "the record does not permit an inference that M was in shock, frightened for her safety, incoherent, or acting spontaneously without conscious reflection." The state counters that the evidence supports the trial court's finding that M was still under the stress of the event, pointing to the fact that M made the statements within 20 minutes of the event, that M was injured and bleeding, that M was upset and crying, that M made the statements in response to an open-ended question about what happened, and that M had no apparent reason to lie.

A general description of someone being "upset" or "emotional" after an event, in and of itself, "is slim proof of the type of emotional state necessary for a statement to qualify as an excited utterance." *Wilson v. Laney*, 317 Or App 324, 333, 504 P3d 666 (2022). There are "important gradations to such emotions," as the case law demonstrates. *Id*. Moreover, the mental condition of the declarant is only one factor relevant to the analysis. *Carlson*, 311 Or at 218. Here, we are ultimately persuaded that the trial court did not err in deciding, on this record, that M's out-of-court statements to Jorge within 20 minutes of the incident qualified as excited utterances under OEC 803(2). We therefore reject defendant's first assignment of error.

*M's statements to the deputy*. The trial court admitted M's out-of-court statements to the deputy, as translated from Spanish to English in real time by Jorge, under the domestic-violence exception to the hearsay rule. As relevant here, that exception applies to "[a] statement that purports to narrate, describe, report or explain an incident of domestic violence," where the statement was made by the victim to a peace officer "within 24 hours after the incident occurred,"

and the statement has "sufficient indicia of reliability." OEC 803(26). The court is to consider "all circumstances surrounding the statement" in determining whether it has sufficient indicia of reliability. OEC 803(26)(b) (also listing nonexclusive factors that may be considered).

Here, the trial court determined that M's out-of-court statements had sufficient indicia of reliability and otherwise met the requirements for the domestic-violence exception. On appeal, defendant challenges that ruling in a very specific way, arguing that M's statements were unreliable because they were translated by Jorge and, in defendant's view, Jorge was not a reliable interpreter.

We are unpersuaded. Jorge testified that he speaks both English and Spanish, that he learned Spanish from M, that he understands M when she speaks in Spanish, that M is the person with whom he most often speaks in Spanish, that he has previously interpreted for M in day-to-day life, and that he asks M for clarification if he ever needs it. Moreover, M mimicked hugging and demonstrated a closed fist to the deputy during the key portion of the translation, which further tends to support the reliability of the translation. On this record, the trial court could reasonably find Jorge's translation of M's statements to be sufficiently reliable, as part of its overall assessment of reliability, to support a determination that M's out-of-court statements to the deputy had "sufficient indicia of reliability" to be admissible under OEC 803(26). We therefore reject defendant's second assignment of error.

Affirmed.